

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/26/2020

———————————————————— x

In re                                              :          Chapter 11
                                                   :
CALIFORNIA RESOURCES CORPORATION, *et*             :          Case No. 20-33568 (DRJ)
*al.*,[1]                                          :
                                                   :          Jointly Administered
                                                   :
                           Debtors.                :          **Ref. Docket No. 18, 185**
                                                   :
———————————————————— x

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION**
**FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE**
**AUTOMATIC STAY AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter

11 Cases"), seeking entry of an Interim Order (as defined below) and the final order (together with

all annexes, schedules and exhibits hereto, this "Final Order") pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title

11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rules 2002,

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their U.S. taxpayer identification numbers
are:  California Resources Corporation (0947); California Heavy Oil, Inc. (4630); California Resources Coles
Levee, L.P. (2995); California Resources Coles Levee, LLC (2087); California Resources Elk Hills, LLC (7310);
California Resources Long Beach, Inc. (6046); California Resources Mineral Holdings LLC (4443); California
Resources Petroleum Corporation (9218); California Resources Production Corporation (5342); California
Resources Production Mineral Holdings, LLC (9071); California Resources Real Estate Ventures, LLC (6931);
California Resources Royalty Holdings, LLC (6393); California Resources Tidelands, Inc. (0192); California
Resources Wilmington, LLC (0263); CRC Construction Services, LLC (7030); CRC Marketing, Inc. (0941);
CRC Services, LLC (6989); Monument Production, Inc. (0782); Oso Verde Farms, LLC (7436); Socal Holding,
LLC (3524); Southern San Joaquin Production, Inc. (4423); Thums Long Beach Company (1774); Tidelands Oil
Production Company LLC (5764).  The Debtors' corporate headquarters is located at 27200 Tourney Road, Suite
200, Santa Clarita, CA 91355.

[2]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2002-1, 4001-1(b), 4002-1(i) and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "<u>Complex Case Procedures</u>") promulgated by the United States Bankruptcy Court for the Southern District of Texas, providing, among other things:

(1)     authorizing the Debtors to obtain debtor-in-possession financing in the aggregate principal amount of up to $1,133,010,655.62 consisting of:

(A) a senior secured superpriority debtor-in-possession revolving credit facility (the "<u>Senior DIP Facility</u>") in the aggregate principal amount of up to $483,010,655.62, consisting of (i) a $400,139,598.62 new money subfacility (the "<u>Senior New Money Subfacility</u>"), including $150,139,598.62 to deem the RBL Letters of Credit (as defined below) as being issued under the Senior New Money Subfacility and a sublimit of not more than $35,000,000 for additional letters of credit (together, the "<u>DIP Letters of Credit</u>"), and (ii) a $82,871,057.00 "roll-up" term loan subfacility (the "<u>Senior Roll-Up Subfacility</u>") (all extensions of credit, including the issuance or deemed issuance of DIP Letters of Credit, under the Senior DIP Facility, the "<u>Senior DIP Loans</u>") pursuant to the terms and conditions of this Final Order and that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement, dated as of July 23, 2020 and substantially in the form attached as <u>Exhibit 1</u> to the Interim Order (as amended, supplemented, restated, refunded, refinanced, replaced or otherwise modified from time to time in accordance with the terms thereof, the "<u>Senior DIP Credit Agreement</u>", and together with all agreements, commitment and fee letters, documents, instruments and certificates executed, delivered or filed in connection therewith, as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, collectively, the "<u>Senior DIP Loan Documents</u>"), by and among California Resources Corporation, as borrower ("<u>CRC</u>" or the "<u>Senior DIP Borrower</u>"), each of the other Debtors, as guarantors (the "<u>Senior DIP Guarantors</u>"), JPMorgan Chase Bank, N.A. (or any successor or assign), as administrative agent and collateral agent (in such capacities, the "<u>Senior DIP Agent</u>"), JPMorgan Chase Bank, N.A., Bank of America, N.A. and Citibank, N.A. in their capacity as the issuing banks for DIP Letters of Credit (the "<u>Senior Issuing Banks</u>") and the financial institutions party thereto from time to time as lenders (the "<u>Senior DIP Lenders</u>", and together with the Senior DIP Agent, the Senior Issuing Banks and each other Secured Party (as defined in the Senior DIP Credit Agreement), the "<u>Senior DIP Secured Parties</u>"); and

(B) a junior secured superpriority debtor-in-possession term loan facility (the "<u>Junior DIP Facility</u>", together with the Senior DIP Facility, the "<u>DIP Facilities</u>") in the aggregate principal amount of $650,000,000 (all extensions of credit under the Junior DIP Facility,

2

the "Junior DIP Loans", and together with the Senior DIP Loans, the "DIP Loans") pursuant to the terms and conditions of this Final Order and that certain Junior Secured Superpriority Debtor-In-Possession Credit Agreement dated as of July 23, 2020 and substantially in the form attached as Exhibit 2 to the Interim Order (as amended, supplemented, restated, refunded, refinanced, replaced or otherwise modified from time to time in accordance with the terms thereof, the "Junior DIP Credit Agreement", and together with all agreements, commitment and fee letters, documents, instruments and certificates executed, delivered or filed in connection therewith, as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, collectively, the "Junior DIP Loan Documents"); the Junior DIP Credit Agreement together with the Senior DIP Credit Agreement, the "DIP Credit Agreements", and the Junior DIP Loan Documents together with the Senior DIP Loan Documents, the "DIP Loan Documents"), by and among CRC, as borrower (the "Junior DIP Borrower", and together with the Senior DIP Borrower, the "DIP Borrowers"), each of the other Debtors, as guarantors (the "Junior DIP Guarantors", and together with the Senior DIP Guarantors, the "DIP Guarantors"), Alter Domus Products Corp. (or any successor or assign), as administrative agent (in such capacity, the "Junior DIP Agent", and together with the Senior DIP Agent, the "DIP Agents"), and the financial institutions party thereto from time to time as lenders (the "Junior DIP Lenders", and together with the Junior DIP Agent, and each other Secured Party (as defined in the Junior DIP Credit Agreement), the "Junior DIP Secured Parties"; the Junior DIP Lenders together with the Senior DIP Lenders, the "DIP Lenders", and the Junior DIP Secured Parties together with the Senior DIP Secured Parties, the "DIP Secured Parties");

(2)     authorizing the Debtors to draw up to $266,139,598.62 of Senior DIP Loans under the Senior New Money Subfacility during the interim period pending entry of this Final Order to be used in accordance with the Interim Order and the Senior DIP Loan Documents, consisting of up to $85,000,000 for new money Senior DIP Loans, $150,139,598.62 of capacity to issue (or deemed to issue) DIP Letters of Credit to replace the RBL Letters of Credit and up to $31,000,000 to issue additional new DIP Letters of Credit to backstop surety bonds;

(3)     authorizing the Debtors to fully draw $82,871,057.00 of Senior DIP Loans under the Roll-Up Subfacility on the closing date of the Senior DIP Facility and to use the proceeds thereof to refund, refinance, replace and repay $82,871,057.00 of the RBL Loans (as defined below);

(4)     authorizing the Debtors to fully draw $650,000,000 of Junior DIP Loans under the Junior DIP Facility on the closing date of the Junior DIP Facility to repay $650,000,000 of the RBL Loans;

(5)     authorizing the Debtors to issue DIP Letters of Credit, including deeming all of the RBL Letters of Credit to be DIP Letters of Credit issued under the Senior New Money Subfacility;

(6)     authorizing the Debtors to execute and deliver to the DIP Secured Parties and perform under the DIP Credit Agreements and the other DIP Loan Documents and to perform

3

such other and further acts as may be necessary or desirable in connection with the DIP Loan Documents;

(7)     authorizing and directing the Debtors to incur and pay all DIP Obligations (as defined below), subject to the terms of the respective DIP Loan Documents and this Final Order;

(8)     granting each DIP Agent, for the benefit of itself and the other DIP Secured Parties for which it is the agent, and authorizing the Debtors to incur, valid, enforceable, non-avoidable, automatically and fully perfected priming liens on and security interests in all DIP Collateral (as defined below), including, without limitation, all Cash Collateral (as defined below), to secure the respective DIP Obligations, which liens and security interests shall be subject to the rankings and priorities set forth herein;

(9)     granting to the Senior DIP Secured Parties and Junior DIP Secured Parties allowed superpriority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all Senior DIP Obligations and Junior DIP Obligations (each as defined below), respectively, as set forth herein, which claims shall be subject to the ranking and priorities set forth herein;

(10)     authorizing the Debtors' use of the proceeds of the DIP Facilities and Cash Collateral, in each case solely in accordance with the Approved Budget (as defined below and subject to Permitted Variances (as defined below)), and subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents;

(11)     providing adequate protection, as and to the extent set forth herein, to the Prepetition RBL Secured Parties, Prepetition FLMO Secured Parties, Prepetition FLLO Secured Parties and Prepetition Second Lien Secured Parties (each as defined below) for any Diminution in Value (as defined below) of their respective interests in the Prepetition Collateral (as defined below), including Cash Collateral;

(12)     subject to the limitations set forth herein, approving certain stipulations by the Debtors with respect to the Prepetition RBL Credit Agreement, the Prepetition RBL Obligations, the Prepetition Senior Liens, the Prepetition FLMO Term Credit Agreement, the Prepetition FLMO Obligations, the Prepetition FLLO Term Credit Agreement, the Prepetition FLLO Obligations, the Prepetition FLLO Liens, the Prepetition Second Lien Indenture, the Prepetition Second Lien Note Obligations, the Prepetition Second Liens and the Prepetition Collateral (each as defined below);

(13)     waiving the rights of the Debtors to surcharge the DIP Collateral or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(14)     waiving the application of the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the Prepetition Secured Parties (as defined below) with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral;

(15)     waiving the equitable doctrine of "marshaling" and other similar doctrines as to the DIP Secured Parties and the Prepetition Secured Parties; and

4

(16)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order.

The Court (as defined below) having considered the Motion, the DIP Loan Documents on file with the Court, the Declaration of Todd A. Stevens in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Stevens First Day Declaration") and the Declaration of Mark Rajcevich in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Rajcevich First Day Declaration" and together with the Stevens First Day Declaration, the "First Day Declarations"), the Declaration of Bruce Mendelsohn in support of the Motion (the "Mendelsohn Declaration"), the pleadings filed with the Court, and the evidence proffered or adduced at the interim hearing held on July 17, 2020, and the final hearing having been held on August 14, 2020 (the "Final Hearing"); and this Court having entered the interim order on July 22, 2020 [Docket No. 185] (the "Interim Order"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Bankruptcy Local Rules and Complex Case Procedures; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

SC1:5275465.11

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]

A.      *Petition Date*.  On July, 15, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court") commencing these Chapter 11 Cases.

B.      *Debtors-in-Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  The United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee") on July 27, 2020 and reconstituted it on July 29, 2020.

D.      *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings, and over the persons and property affected thereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules and Rules 2002-1, 4001-1(b), 4002-1(i) and 9013-1 of the Bankruptcy Local Rules.  Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      *Debtors' Stipulations*.  In requesting the DIP Facilities, and in exchange for and as a material inducement to the DIP Lenders for their commitments to provide the respective DIP Facilities, and in exchange for and in recognition of the priming of the Prepetition Senior Liens,

---

[3]    Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and vice versa pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

the Prepetition FLLO Liens and the Prepetition Second Liens (each as defined below), subject to

paragraph 29 hereof, the Debtors hereby admit, stipulate, acknowledge and agree that:

(i)      *Prepetition RBL Facility*.  Pursuant to the Credit Agreement, dated as of September 24, 2014 (as amended, supplemented, restated or otherwise modified from time to time, the "Prepetition RBL Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including the Security Documents (as defined therein), collectively, the "Prepetition RBL Loan Documents") by and among (a) CRC, as borrower (the "RBL Borrower"), (b) the guarantors party thereto (together with the RBL Borrower, the "Prepetition RBL Loan Parties"), (c) JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "Prepetition RBL Agent"), (d) the lenders party thereto (the "Prepetition RBL Lenders") and (e) the Letter of Credit Issuers party thereto (together with any other Secured Parties (as defined in the Prepetition RBL Credit Agreement), collectively, the "Prepetition RBL Secured Parties"), the Prepetition RBL Secured Parties provided revolving loans and other extensions of credit (the "RBL Loans") to the RBL Borrower, and the Letter of Credit Issuers issued letters of credit (the "RBL Letters of Credit") for the account of the RBL Borrower.

(ii)      *Prepetition RBL Obligations*.  As of the Petition Date, without defense, counterclaim or offset of any kind, the Prepetition RBL Loan Parties were jointly and severally indebted to the Prepetition RBL Secured Parties in the aggregate principal amount of $732,871,057 on account of RBL Loans, *plus* $150,139,598.62 with respect to issued and outstanding RBL Letters of Credit, *plus* accrued but unpaid interest, fees and expenses *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition RBL Loan Documents, including, without limitation, principal, accrued and unpaid interest, premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition RBL Loan Documents (collectively, including any "Obligations" as provided solely in clause (a)(i) of the term "Obligations" in the Prepetition RBL Credit Agreement, the "Prepetition RBL Obligations").

(iii)      *Prepetition First Lien Mid-Out Term Facility*.  Pursuant to the Credit Agreement, dated as of November 17, 2017 (as amended, supplemented, restated or otherwise modified from time to time, the "Prepetition FLMO Term Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including the Security Documents (as defined therein), collectively, the "Prepetition FLMO Term Loan Documents") by and among (a) CRC, as borrower (the "FLMO Term Loan Borrower"), (b) the lenders party thereto (the "Prepetition FLMO Term Loan Lenders", and together with any Secured Parties (as defined in the Prepetition FLMO Term Credit Agreement), collectively, the "Prepetition FLMO Secured Parties") and (c) The Bank of New York Mellon Trust Company N.A. ("BNYM"), as administrative agent (in such capacity, the "Prepetition FLMO Term Loan Agent"), the Prepetition FLMO Term Loan Lenders provided term loans (the "Prepetition FLMO Term Loans") and other financial accommodations to the FLMO Term Loan Borrower, which were guaranteed by the guarantors party to the Guarantee, dated as of November

17, 2017 (together with the FLMO Term Loan Borrower, the "<u>Prepetition FLMO Term Loan Parties</u>", and together with the Prepetition RBL Loan Parties, the "<u>Prepetition Senior Loan Parties</u>").

(iv)     *Prepetition First Lien Mid-Out Obligations*.   As of the Petition Date, without defense, counterclaim or offset of any kind, the Prepetition FLMO Term Loan Parties were jointly and severally indebted to the Prepetition FLMO Term Loan Lenders in the aggregate principal amount of $1,300,000,000, *plus* accrued but unpaid interest, fees and expenses, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition FLMO Term Loan Documents, including, without limitation, principal, accrued and unpaid interest, premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition FLMO Term Loan Documents (collectively, including any Obligations (as defined in the Prepetition FLMO Term Credit Agreement), the "<u>Prepetition FLMO Obligations</u>").

(v)     *Prepetition Senior Liens and Prepetition Senior Collateral*.   Pursuant to (i) the Second Amended and Restated Security Agreement, dated as of November 17, 2017, (ii) the Amended and Restated Pledge Agreement, dated as November 17, 2017, and (iii) the other Security Documents (as defined in the Prepetition RBL Credit Agreement and the Prepetition FLMO Term Credit Agreement), in order to secure the Prepetition RBL Obligations and the Prepetition FLMO Obligations, the Prepetition Senior Loan Parties granted to BNYM, as collateral agent for each of the Prepetition RBL Secured Parties and Prepetition FLMO Secured Parties (in such capacity, the "<u>Prepetition Senior Secured Collateral Agent</u>"), for the benefit of itself and the Prepetition RBL Secured Parties and Prepetition FLMO Secured Parties, properly perfected and continuing first-priority liens, mortgages and security interests (such interests the "<u>Prepetition Senior Liens</u>") in the Collateral (as defined in the Prepetition RBL Loan Documents and the Prepetition FLMO Term Loan Documents) (collectively, the "<u>Prepetition Collateral</u>"); *provided*, that the term Prepetition Collateral does not include any Collateral (as defined in the Prepetition RBL Loan Documents and the Prepetition FLMO Term Loan Documents) in which a lien, mortgage and security interest was not required to be (and was not as of the Petition Date) granted and perfected by the Prepetition RBL Loan Documents and the Prepetition FLMO Term Loan Documents, and which Collateral is not otherwise subject to a properly perfected lien, mortgage or security interest of the Prepetition Secured Parties.

(vi)     *Collateral Agency Agreement*.   The relative rights and remedies of the Prepetition RBL Secured Parties and the Prepetition FLMO Secured Parties in respect of the Prepetition Collateral and the relative priority of their rights to the proceeds of the Prepetition Collateral are governed by that certain Collateral Agency Agreement, dated as of November 17, 2017, by and among the Prepetition RBL Agent, the Prepetition FLMO Term Loan Agent and the Prepetition Senior Secured Collateral Agent, and the grantors party thereto (as amended, supplemented or otherwise modified from time to time, the "<u>Collateral Agency Agreement</u>"). Pursuant to the Collateral Agency Agreement, the Prepetition FLMO Term Loan Agent, on behalf of the Prepetition FLMO Secured Parties, agreed, among other things: (a) to subordinate the

Prepetition FLMO Secured Parties' rights in the Prepetition Collateral (and proceeds thereof) to those of the Prepetition RBL Secured Parties; (b) to be bound by the waterfall and turnover provisions contained therein; and (c) to (I) consent to, or not oppose, certain actions taken, or rights asserted, by the Prepetition RBL Secured Parties and (II) refrain from taking certain actions with respect to the Prepetition Collateral, including in connection with a bankruptcy proceeding.

        (vii) *Prepetition First Lien Last-Out Term Facility*.  Pursuant to the Credit Agreement, dated as of August 12, 2016 (as amended, supplemented, restated or otherwise modified from time to time, the "Prepetition FLLO Term Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including the Security Documents (as defined in the Prepetition FLLO Term Credit Agreement), collectively, the "Prepetition FLLO Term Loan Documents") by and among (a) CRC, as borrower (the "FLLO Term Loan Borrower"), (b) the lenders party thereto (collectively, the "Prepetition FLLO Term Loan Lenders", and together with the Secured Parties (as defined in the Prepetition FLLO Term Credit Agreement), the "Prepetition FLLO Secured Parties", and together with the Prepetition RBL Secured Parties and the Prepetition FLMO Secured Parties, the "Prepetition Senior Secured Parties") and (c) BNYM, as administrative agent and collateral agent (in such capacities, the "Prepetition FLLO Term Loan Agent"), the FLLO Term Loan Lenders provided term loans and other financial accommodations to the FLLO Term Loan Borrower, which were guaranteed by the guarantors party to the Guarantee, dated as of August 12, 2016 (together with the FLLO Term Loan Borrower, the "Prepetition FLLO Term Loan Parties").

        (viii) *Prepetition First Lien Last-Out Obligations*.  As of the Petition Date, without defense, counterclaim or offset of any kind, the Prepetition FLLO Term Loan Parties were jointly and severally indebted to the Prepetition FLLO Term Loan Lenders in the aggregate principal amount of $1,000,000,000, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the FLLO Term Loan Documents, including, without limitation, principal, accrued and unpaid interest, premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition FLLO Term Loan Documents (collectively, including any Obligations (as defined in the Prepetition FLLO Term Credit Agreement), the "Prepetition FLLO Obligations", and together with the Prepetition RBL Obligations and Prepetition FLMO Obligations, the "Prepetition Senior Obligations").

        (ix) *Prepetition FLLO Liens*.  To secure the Prepetition FLLO Obligations, the Prepetition FLLO Term Loan Parties granted to BNYM, as Prepetition FLLO Term Loan Agent, for the benefit of itself and the Prepetition FLLO Secured Parties, properly perfected and continuing first-priority "last-out" liens, mortgages and security interests (collectively, the "Prepetition FLLO Liens") in the Prepetition Collateral.  The Prepetition FLLO Liens are *pari passu* with the Prepetition Senior Liens, subject to the terms of the Pari Passu Intercreditor Agreement (as defined below).

SC1:5275465.11

(x)      *Pari Passu Intercreditor Agreement*.   The Prepetition RBL Agent, Prepetition FLMO Term Loan Agent and Prepetition FLLO Term Loan Agent are party to the Pari Passu Intercreditor Agreement, dated as of August 15, 2016 (as amended, supplemented or otherwise modified from time to time, the "Pari Passu Intercreditor Agreement"), which governs the relative rights and remedies of the Prepetition RBL Secured Parties and Prepetition FLMO Secured Parties, on the one hand, and the Prepetition FLLO Secured Parties, on the other hand, and the relative priority of their respective security interests in the Prepetition Collateral.  Pursuant to the Pari Passu Intercreditor Agreement, the Prepetition FLLO Term Loan Agent, on behalf of the Prepetition FLLO Secured Parties, agreed, among other things: (a) to subordinate the Prepetition FLLO Secured Parties' rights in the Prepetition Collateral (and proceeds thereof) to those of the Prepetition RBL Secured Parties and Prepetition FLMO Secured Parties; (b) to be bound by the waterfall and turnover provisions contained therein; and (c) to (I) consent to, or not oppose, certain actions taken, or rights asserted, by the Prepetition RBL Secured Parties and Prepetition FLMO Secured Parties and (II) refrain from taking certain actions with respect to the Prepetition Collateral, including in connection with a bankruptcy proceeding.

(xi)      *Prepetition Second Lien Notes*.   CRC issued its 8.00% Senior Secured Second Lien Notes due 2022 (the "Prepetition Second Lien Notes") pursuant to that certain Indenture, dated as of December 15, 2015 (as amended, supplemented, restated or otherwise modified from time to time, the "Prepetition Second Lien Indenture", and together with all other agreements, documents, instruments and certificates executed or delivered in connection, collectively, the "Prepetition Second Lien Documents", and together with the Prepetition RBL Loan Documents, the Prepetition FLMO Term Loan Documents and the Prepetition FLLO Term Loan Documents, the "Prepetition Debt Documents"), by and among (a) CRC, as issuer (the "Second Lien Issuer"), (b) the guarantors party thereto (together with the Second Lien Issuer, the "Prepetition Second Lien Note Parties") and (c) BNYM, as trustee and collateral trustee (in such capacities, the "Prepetition Second Lien Collateral Trustee") for the equal and ratable benefit of the holders of notes issued pursuant thereto (the "Prepetition Second Lien Noteholders", and together with the Prepetition Second Lien Collateral Trustee, the "Prepetition Second Lien Secured Parties", and together with the Prepetition Senior Secured Parties, the "Prepetition Secured Parties").

(xii)     *Prepetition Second Lien Note Obligations*.   As of the Petition Date, without defense, counterclaim or offset of any kind, the Prepetition Second Lien Note Parties were jointly and severally indebted to the Prepetition Second Lien Noteholders in the aggregate principal amount of $1,809,000,000, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Second Lien Documents, including, without limitation, principal, accrued and unpaid interest, premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Second Lien Documents (collectively, including any Obligations (as defined in the Prepetition Second Lien Indenture), the "Prepetition Second Lien Note Obligations", and together with the Prepetition RBL Obligations, the Prepetition FLMO Obligations and the Prepetition FLLO Obligations, the "Prepetition Obligations").

10

(xiii)   *Prepetition Second Lien Collateral.*  To secure the Prepetition Second Lien Note Obligations, the Second Lien Note Parties granted to the Prepetition Second Lien Collateral Trustee, for the benefit of itself and the Prepetition Second Lien Secured Parties, properly perfected and continuing junior-priority liens, mortgages and security interests (collectively, the "<u>Prepetition Second Liens</u>", and together with the Prepetition Senior Liens and the Prepetition FLLO Liens, the "<u>Prepetition Liens</u>") in the Prepetition Collateral.[4]

(xiv)   *Second Lien Intercreditor Agreement.*  The Prepetition RBL Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee are party to that certain Intercreditor Agreement dated as of December 15, 2015 (as amended, supplemented or otherwise modified from time to time, the "<u>Second Lien Intercreditor Agreement</u>", and together with the Pari Passu Intercreditor Agreement and Collateral Agency Agreement, the "<u>Intercreditor Agreements</u>").  Pursuant to the Second Lien Intercreditor Agreement, the Prepetition Second Lien Collateral Trustee, on behalf of the Prepetition Second Lien Secured Parties agreed, among other things: (a) that the Prepetition Senior Liens and the Prepetition FLLO Liens on the Prepetition Collateral are senior in all respects to the Prepetition Second Liens; (b) to be bound by the waterfall and turnover provisions contained therein; and (c) to (I) consent to, or not oppose, certain actions taken, or rights asserted, by the Prepetition RBL Secured Parties, the Prepetition FLMO Secured Parties, and the Prepetition FLLO Secured Parties, and (II) refrain from taking certain actions with respect to the Prepetition Collateral, including in connection with a bankruptcy proceeding.

(xv)   *Validity and Enforceability of Prepetition RBL Obligations and Prepetition Senior Liens.*  (a) The Prepetition Senior Liens are valid, binding, enforceable, non-avoidable and properly perfected liens granted to, or for the benefit of, the Prepetition RBL Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (b) the Prepetition Senior Liens are senior in priority over any and all other liens on the Prepetition Collateral (other than (x) liens expressly permitted to be senior to all Prepetition Senior Liens under the Prepetition RBL Credit Agreement, solely to the extent such permitted liens were existing, valid, enforceable, properly perfected and non-avoidable as of the Petition Date or that are perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code (the "<u>Permitted Prior Liens</u>") and (y) the Prepetition FLLO Liens (which are *pari passu* with the Prepetition Senior Liens)); (c) the Prepetition RBL Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition RBL Loan Parties, enforceable in accordance with the terms of the Prepetition RBL Loan Documents; and (d) the Debtors and their estates hold no (and the Debtors hereby waive, discharge and release any) valid or enforceable Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights of any kind, and forever and the Debtors irrevocably waive, discharge and release any right they may have to (A) challenge the validity, enforceability, priority, security, perfection and non-avoidability of any of the Prepetition RBL Obligations, the Prepetition

---

[4]   For purposes of these stipulations, all references to Prepetition Collateral as to the Prepetition RBL Secured Parties, the Prepetition FLMO Secured Parties, the Prepetition FLLO Secured Parties and the Prepetition Second Lien Secured Parties excludes the "Excluded Property" as defined in each of the Prepetition RBL Credit Agreement, Prepetition FLMO Credit Agreement, Prepetition FLLO Credit Agreement and Prepetition Second Lien Indenture, respectively.

SC1:5275465.11

RBL Loan Documents or the Prepetition Senior Liens and (B) assert any and all Claims or causes of action, offsets, counterclaims, set off rights, objections, challenges, choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations, costs, expenses, judgments or defenses against the Prepetition RBL Secured Parties and each of their respective former, current or future officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives, whether arising at law or in equity, including (without limitation) any claims arising from actions relating to any aspect of the relationship between the Prepetition RBL Secured Parties and the Debtors, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to the Prepetition RBL Loan Documents, the Prepetition Senior Liens or the Prepetition RBL Obligations, the Debtors' attempts to restructure the Prepetition RBL Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of this Final Order and the use of Cash Collateral hereunder, or any and all Claims and causes of action arising under the Bankruptcy Code as applicable.

(xvi)   *Validity and Enforceability of Prepetition FLMO Obligations and Prepetition Senior Liens*.   (a) The Prepetition Senior Liens are valid, binding, enforceable, non-avoidable and properly perfected liens granted to, or for the benefit of, the Prepetition FLMO Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (b) the Prepetition Senior Liens are senior in priority over any and all other liens on the Prepetition Collateral (other than (x) Permitted Prior Liens and (y) the Prepetition FLLO Liens (which are *pari passu* with the Prepetition Senior Liens)); (c) the Prepetition FLMO Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition FLMO Term Loan Parties, enforceable in accordance with the terms of the Prepetition FLMO Term Loan Documents; and (d) the Debtors and their estates hold no (and the Debtors hereby waive, discharge and release any) valid or enforceable Claims, counterclaims, causes of action, defenses or setoff rights of any kind, and forever and the Debtors irrevocably waive, discharge and release any right they may have to (A) challenge the validity, enforceability, priority, security, perfection and non-avoidability of any of the Prepetition FLMO Obligations, the Prepetition FLMO Term Loan Documents or the Prepetition Senior Liens and (B) assert any and all Claims, causes of action, offsets, counterclaims, set off rights, objections, challenges, choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations, costs, expenses, judgments or defenses against the Prepetition FLMO Secured Parties, and each of their respective former, current or future officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives, whether arising at law or in equity, including (without limitation) any claims arising from actions relating to any aspect of the relationship between the Prepetition FLMO Secured Parties and the Debtors, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to

12

the Prepetition FLMO Term Loan Documents, the Prepetition Senior Liens, the Prepetition FLMO Obligations, the Debtors' attempts to restructure the Prepetition FLMO Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of this Final Order and the use of Cash Collateral hereunder, or any and all Claims and causes of action arising under the Bankruptcy Code as applicable.

(xvii) *Validity and Enforceability of Prepetition FLLO Liens and Prepetition FLLO Obligations*. (a) The Prepetition FLLO Liens are valid, binding, enforceable, non-avoidable and properly perfected liens granted to, or for the benefit of, the Prepetition FLLO Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (b) the Prepetition FLLO Liens are *pari passu* with the Prepetition Senior Liens, subject to the Pari Passu Intercreditor Agreement, and senior in priority over any and all other liens on the Prepetition Collateral (other than any Permitted Prior Liens); (c) the Prepetition FLLO Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition FLLO Term Loan Parties, enforceable in accordance with the terms of the Prepetition FLLO Term Loan Documents; and (d) the Debtors and their estates hold no (and the Debtors hereby waive, discharge and release any) valid or enforceable Claims, counterclaims, causes of action, defenses or setoff rights of any kind, and forever the Debtors irrevocably waive, discharge and release any right they may have to (A) challenge the validity, enforceability, priority, security, perfection and non-avoidability of any of the Prepetition FLLO Obligations, the Prepetition FLLO Term Loan Documents or the Prepetition FLLO Liens, respectively, and (B) assert any and all Claims, causes of action, offsets, counterclaims, set off rights, objections, challenges, choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations, costs, expenses, judgments or defenses against the Prepetition FLLO Secured Parties, and each of their respective former, current or future officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives, whether arising at law or in equity, including (without limitation) any claims arising from actions relating to any aspect of the relationship between the Prepetition FLLO Secured Parties and the Debtors, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to the Prepetition FLLO Term Loan Documents, the Prepetition FLLO Liens, the Prepetition FLLO Obligations, the Debtors' attempts to restructure the Prepetition FLLO Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of this Final Order and the use of Cash Collateral hereunder, or any and all Claims and causes of action arising under the Bankruptcy Code as applicable.

(xviii) *Validity and Enforceability of Prepetition Second Liens and Prepetition Second Lien Note Obligations*. The Debtors acknowledge and agree that, as of the Petition Date: (a) The Prepetition Second Liens are valid, binding, enforceable, non-avoidable and properly perfected liens that were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (b) the Prepetition

Second Liens are junior in priority to the Permitted Prior Liens, the Prepetition Senior Liens and the Prepetition FLLO Liens, and are subject to the Second Lien Intercreditor Agreement; (c) the Prepetition Second Lien Note Obligations constitute legal, valid, binding and non-avoidable obligations of the Second Lien Note Parties, enforceable in accordance with the terms of the Prepetition Second Lien Documents; and (d) the Debtors and their estates hold no (and the Debtors hereby waive, discharge and release any) valid or enforceable Claims, counterclaims, causes of action, defenses or setoff rights of any kind, and forever and the Debtors irrevocably waive, discharge and release any right they may have to (A) challenge the validity, enforceability, priority, security, perfection and non-avoidability of any of the Prepetition Second Lien Note Obligations, the Prepetition Second Lien Documents or the Prepetition Second Liens, respectively, and (B) assert any and all Claims or causes of action, offsets, counterclaims, set off rights, objections, challenges, choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations, costs, expenses, judgments or defenses against the Prepetition Second Lien Secured Parties, and each of their respective former, current or future officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives, whether arising at law or in equity, including (without limitation) any claims arising from actions relating to any aspect of the relationship between the Prepetition Second Lien Secured Parties and the Debtors, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to the Prepetition Second Lien Documents, the Prepetition Second Liens or the Prepetition Second Lien Note Obligations, the Debtors' attempts to restructure the Prepetition Second Lien Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of this Final Order and the use of Cash Collateral hereunder, or any and all Claims and causes of action arising under the Bankruptcy Code as applicable.

(xix)   *Cash Collateral*.  All of the Debtors' cash existing on the Petition Date, wherever located (including, without limitation, any cash in deposit accounts of the Debtors or otherwise) constitutes cash collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code to the extent that such cash constitutes Prepetition Collateral (subject in all respects to the Intercreditor Agreements) (the "Cash Collateral").

(xx)   *No Control*.  None of the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of the actions taken with respect to, in connection with, related to, or arising from this Final Order, the DIP Facilities, the DIP Loan Documents or the Prepetition Debt Documents.

(xxi)   *Prepetition RBL Obligation Repayment.* Without limiting any of the stipulations contained herein, on July 23, 2020, in accordance with the Interim Order, the Debtors repaid the RBL Loans in full with proceeds from the Senior Roll-Up Subfacility and the Junior DIP Facility, and the RBL Letters of Credit were deemed to be issued under the Senior DIP Facility as DIP Letters of Credit.

14

F.      *Findings Regarding Postpetition Financing*.

(i)      *Request for Postpetition Financing.*  The Debtors seek final approval of the DIP Loan Documents, the DIP Facilities, and use of Cash Collateral arrangements pursuant to this Final Order.

(ii)      *Good Cause.*  Good cause has been shown for entry of this Final Order.

(iii)      *Priming of Prepetition Liens.*  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d)(1) of the Bankruptcy Code, as contemplated by this Final Order and the DIP Facilities and as further described below, will enable the Debtors to obtain the DIP Facilities and to preserve and maximize the value of their estates to the benefit of their stakeholders.  The Prepetition RBL Agent, on behalf of the Prepetition RBL Secured Parties, has consented to the priming of the Prepetition Senior Liens as provided by and subject to the terms of this Final Order and the DIP Loan Documents and does not object to the adequate protection as provided in and subject to the terms of this Final Order; *provided*, that nothing in this Final Order or the DIP Loan Documents shall (x) be construed as the affirmative consent by the Prepetition RBL Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and the DIP Loan Documents, (y) be construed as a consent by the Prepetition RBL Secured Parties to the terms of any other financing, other than the DIP Facilities, or any other lien encumbering the Prepetition Collateral other than the DIP Liens (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of the Prepetition RBL Secured Parties (subject to the Intercreditor Agreements) to seek new, different or additional adequate protection, or to assert the interests of any of the Prepetition RBL Secured Parties.  The Prepetition FLMO Term Loan Agent, on behalf of the Prepetition FLMO Secured Parties, has consented or (pursuant to the Collateral Agency Agreement) is deemed to consent to the priming of the Prepetition Senior Liens,

15

the use of Cash Collateral and the adequate protection pursuant to the DIP Facilities as provided in this Final Order on the date hereof and the DIP Loan Documents and does not object to the adequate protection as provided in and subject to the terms of this Final Order; *provided*, that nothing in this Final Order or the DIP Loan Documents shall (x) be construed as the affirmative consent by the Prepetition FLMO Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and the DIP Loan Documents as in effect on the date hereof, (y) be construed as a consent by the Prepetition FLMO Secured Parties to the terms of any other financing, other than the DIP Facilities as in effect on the date hereof, or any other lien encumbering the Prepetition Collateral other than the DIP Liens (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of the Prepetition FLMO Secured Parties (subject to the Intercreditor Agreements) to seek new, different or additional adequate protection, or to assert the interests of any of the Prepetition FLMO Secured Parties.  The Prepetition FLLO Term Loan Agent, on behalf of the Prepetition FLLO Secured Parties, has consented or (pursuant to the Pari Passu Intercreditor Agreement) is deemed to consent to the priming of the Prepetition FLLO Liens, the use of Cash Collateral and the adequate protection pursuant to the DIP Facilities as provided in this Final Order on the date hereof and the DIP Loan Documents and does not object to the adequate protection as provided in and subject to the terms of this Final Order; *provided*, that nothing in this Final Order or the DIP Loan Documents shall (x) be construed as the affirmative consent by the Prepetition FLLO Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and the DIP Loan Documents as in effect on the date hereof, (y) be construed as a consent by the Prepetition FLLO Secured Parties to the terms of any other financing, other than the DIP Facilities as in effect on the date hereof, or any other lien encumbering the Prepetition Collateral other than the DIP Liens (whether senior or junior) or

16

(z) prejudice, limit or otherwise impair the rights of the Prepetition FLLO Secured Parties (subject to the Intercreditor Agreements) to seek new, different or additional adequate protection, or to assert the interests of any of the Prepetition FLLO Secured Parties. The Prepetition Second Lien Collateral Trustee, on behalf of the Prepetition Second Lien Secured Parties, has consented or (pursuant to the Second Lien Intercreditor Agreement) is deemed to consent to the priming of the Prepetition Second Liens, the use of Cash Collateral and the adequate protection provided in this Final Order and the DIP Loan Documents and does not object to the adequate protection as provided in and subject to the terms of this Final Order; *provided*, that nothing in this Final Order or the DIP Loan Documents shall (x) be construed as the affirmative consent by the Prepetition Second Lien Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and the DIP Loan Documents, (y) be construed as a consent by the Prepetition Second Lien Secured Parties to the terms of any other financing, other than the DIP Facilities, or any other lien encumbering the Prepetition Collateral other than the DIP Liens (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of the Prepetition Second Lien Secured Parties (subject to the Intercreditor Agreements) to seek new, different or additional adequate protection, or to assert the interests of any of the Prepetition Second Lien Secured Parties;.

> (iv)     *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral and to obtain the full amount of credit pursuant to the Senior DIP Facility as provided for herein is necessary to the Debtors, their estates, their creditors and other parties-in-interest, and to enable the Debtors to, among other things, fund the costs of these Chapter 11 Cases, make payroll and satisfy other working capital and general corporate purposes, administer and preserve the value of their estates. The Debtors' need to obtain credit pursuant to the Junior DIP Facility to refinance the Prepetition RBL Obligations was a critical requirement to

17

permit the Debtors to obtain financing under the Senior DIP Facility insofar as the Senior DIP Lenders informed the Debtors that they would not make the Senior DIP Facility available without such refinancing. Repayment in full of the Prepetition RBL Obligations with the initial proceeds of the DIP Loans was appropriate because (i) the aggregate value of the Prepetition Collateral that secured the Prepetition RBL Obligations exceeded the aggregate amount of the Prepetition RBL Obligations, (ii) the Prepetition RBL Lenders' senior liens and over-secured claims effectively precluded a non-consensual priming debtor-in-possession or exit financing facility and required the payment in full of the Prepetition RBL Obligations in connection with these Chapter 11 Cases, (iii) it was a condition to closing the Senior DIP Credit Agreement, which provides liquidity to fund these Chapter 11 Cases and working capital during these Chapter 11 Cases, that the initial proceeds of the DIP Loans be used to repay the Prepetition RBL Obligations so that the Debtors' assets that secure the Prepetition RBL Obligations on a first lien basis could be available to secure on a priming lien basis the Senior DIP Obligations, and (iv) the Restructuring Support Agreement[5] among the Debtors and the Consenting Creditors (as defined therein) required the Debtors to use the initial proceeds from the DIP Loans to repay Prepetition RBL Obligations and the failure to make such payment would have given the Consenting Creditors the right to terminate the Restructuring Support Agreement.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors and suppliers, and pay their employees requires the availability of working capital from the Senior DIP Facility and the use of Cash Collateral.  The Debtors' inability to continue to access the financing under the DIP Facilities and use Cash

---

[5]     "Restructuring Support Agreement" refers to that certain Restructuring Support Agreement, dated as of July 15, 2020, as amended, restated, supplemented or otherwise modified from time to time in accordance with the provisions thereof, by and among CRC and each of its affiliates party thereto, the Consenting 2016 Term Loan Lenders, the Consenting 2017 Term Loan Lenders, the Consenting Second Lien Noteholders, and Ares.

SC1:5275465.11

Collateral will harm the Debtors, their estates, their creditors, and the Debtors' chances to successfully reorganize. The Debtors do not have sufficient available sources of unencumbered working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and authorized use of Cash Collateral. The terms of the DIP Facilities, the DIP Loan Documents and this Final Order are fair and reasonable, reflect the Debtors' exercise of sound business judgment and are supported by reasonably equivalent value.

(v)     *No Credit Available on More Favorable Terms.* The DIP Facilities are the best sources of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to obtain financing from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facilities and the DIP Loan Documents. The Debtors have been unable to obtain sufficient unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have been unable to obtain sufficient credit (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Postpetition financing is not otherwise available without granting each DIP Agent, for the benefit of itself and the respective DIP Secured Parties: (1) the DIP Liens (as defined below) on all DIP Collateral, as set forth herein; (2) the Superpriority DIP Claims (as defined below); and (3) the refinancing of the Prepetition RBL Obligations as set forth herein and the other protections set forth in this Final Order. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound

19

business judgment, that the DIP Facilities represent the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(vi)    *Use of Proceeds of the DIP Facilities and Cash Collateral.*  As a condition to entry into the DIP Credit Agreements, the extension of credit under the DIP Facilities and the authorization to use Cash Collateral (including, without limitation, the proceeds of the DIP Facilities), the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that Cash Collateral and the proceeds of the DIP Facilities shall be used only in a manner consistent with the terms and conditions of the DIP Loan Documents and this Final Order (including to refund, refinance, replace and repay the RBL Loans on the closing date of the DIP Facilities and to reimburse any drawn amount of the DIP Letters of Credit), and solely in accordance with the Approved Budget (subject to Permitted Variances).

G.    *Adequate Protection*.  The Prepetition Secured Parties have consented, or have been deemed to consent, as applicable, to the subordination of their respective liens to the DIP Liens and the Carve Out, and the Prepetition Secured Parties have agreed, or have been deemed to agree, to permit the Debtors' use of Prepetition Collateral (including Cash Collateral), in each case, in accordance with and subject to the terms hereof, the Approved Budget (subject to Permitted Variances) and the DIP Loan Documents.  Subject to the Intercreditor Agreements, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, 364 and 507 of the Bankruptcy Code, to adequate protection against the diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) for any reason provided for and allowed by the Bankruptcy Code (collectively, the "Diminution in Value"), including, without limitation, any diminution resulting from the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents, the Interim

20

Order and this Final Order, the payment of any amounts under the Carve Out or pursuant to the Interim Order or this Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay.

H.      *Sections 506(c), 552(b), and Waiver of Marshaling*.  As a material inducement to the DIP Lenders to agree to provide the DIP Facilities, and in light of (a) the DIP Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out to the extent set forth herein, and (b) the Prepetition Secured Parties' agreement to (i) subordinate the Prepetition Liens and the Adequate Protection Liens (as defined below) to the DIP Liens, the Superpriority DIP Claims and the Carve Out (to the extent provided herein), and (ii) consent to the use of Cash Collateral in accordance with and subject to the Approved Budget (subject to Permitted Variances), the DIP Loan Documents and the terms of this Final Order: (a) the DIP Agents, the DIP Lenders and the Prepetition Secured Parties are each entitled to receive a waiver of  (x) the provisions of section 506(c) of the Bankruptcy Code and (y) application of the equitable doctrine of marshaling and other similar doctrines; and (b) the Prepetition Secured Parties are each entitled to receive a waiver of any "equities of the case" exceptions or claims under section 552(b) of the Bankruptcy Code;

I.      *Good Faith of the DIP Agents and the DIP Lenders*.

(i)      *Willingness to Provide Financing*.  The DIP Secured Parties have indicated a willingness to provide postpetition financing to the Debtors subject to, among other things: (a) the entry by the Court of the Interim Order and this Final Order; (b) approval by the Court of the terms and conditions of the DIP Facilities and the DIP Loan Documents; and (c) entry of findings by the Court that such financing is essential to the Debtors' estates, that the DIP Agents and the DIP Secured Parties are extending postpetition credit to the Debtors pursuant to the DIP

Loan Documents and this Final Order in good faith, and that the DIP Agents' and DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facilities, including the extension of credit, the fees, and other amounts paid and to be paid thereunder, and the Cash Collateral arrangements described therein and herein: (a) are fair and reasonable; (b) are the best available to the Debtors under the circumstances; (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (d) are supported by reasonably equivalent value and fair consideration.  The DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agents, the DIP Secured Parties and the applicable Prepetition Secured Parties.  The credit to be extended under the DIP Facilities shall be deemed to have been so advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agents and the DIP Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

J.    *Notice*.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by email, facsimile, overnight courier or hand delivery, to certain parties-in-interest, including: (a) the U.S. Trustee; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis), (c) those persons who have formally appeared in these chapter 11 cases

SC1:5275465.11

and requested service pursuant to Bankruptcy Rule 2002; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Bankruptcy Local Rules; (g) counsel to the Senior DIP Agent; (h) counsel to the Junior DIP Agent; (i) counsel to the ad hoc group of Prepetition FLMO Secured Parties and Prepetition FLLO Secured Parties (which includes as members the Junior DIP Lenders) (the "Ad Hoc First Lien Group"); (j) counsel to the ad hoc group of Prepetition Second Lien Noteholders; (k) counsel to the Prepetition RBL Agent; (l) counsel to the Prepetition FLMO Term Loan Agent; (m) counsel to the Prepetition FLLO Term Loan Agent; (n) counsel to the Prepetition Second Lien Collateral Trustee; (o) counsel to the Committee; and (p) all other known parties with liens of record on assets of the Debtors as of the Petition Date (collectively, the "Notice Parties"). The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Final Order.

K.      *Relief Essential*; *Best Interests of the Debtors' Estates*.  Absent entry of this Final Order, the Debtors' businesses, properties and estates will be irreparably harmed.  The Court concludes that entry of this Final Order is in the best interest of the Debtors' estates and creditors.

NOW THEREFORE, based upon the foregoing findings and conclusions, the Motion, the First Day Declarations, the Mendelsohn Declaration, and the record made before the Court with respect to the Motion at the Interim and Final Hearings and otherwise, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, THAT:

1.      Motion Approved.  The Motion is hereby granted on a final basis, on the terms and conditions set forth in this Final Order and the DIP Loan Documents.  All formal and informal

objections to the interim relief sought in the Motion or to the entry of this Final Order, to the extent not withdrawn or resolved, and all reservation of rights included therein, are hereby overruled.

      2.    <u>Authorization of the DIP Facilities</u>.

      (a)    Each DIP Facility is hereby approved on a final basis. The Debtors were, by the Interim Order, and hereby are on a final basis, expressly and immediately authorized and empowered (a) to establish the Senior DIP Facility and the Junior DIP Facility, (b) to execute, deliver and perform under the Senior DIP Loan Documents and the Junior DIP Loan Documents, and to borrow, incur, guarantee (as applicable), perform and pay the Senior DIP Obligations and the Junior DIP Obligations and create and grant the DIP Liens in the DIP Collateral in favor of the Senior DIP Agent for the benefit of the Senior DIP Secured Parties and in favor of the Junior DIP Agent for the benefit of the Junior DIP Secured Parties, in each case, in accordance with the Interim Order and subject to the terms of this Final Order, the Approved Budget (subject to Permitted Variances) and the Senior DIP Loan Documents and Junior DIP Loan Documents, as applicable, (c) to execute, deliver and perform under any and all other instruments, certificates, agreements and documents which may be requested by either DIP Agent or the DIP Secured Parties, and (d) to take any and all other actions, which may be required, necessary or prudent for the performance by the applicable Debtors under the Senior DIP Facility, the Junior DIP Facility, the Senior DIP Loan Documents or the Junior DIP Loan Documents, the creation and perfection of the DIP Liens or to implement any of the transactions contemplated by the Senior DIP Loan Documents, the Junior DIP Loan Documents, the Interim Order or this Final Order. Without limiting the foregoing, by the Interim Order, the Debtors were and, by this Final Order, are on a final basis, authorized and directed to pay (subject to paragraph 22(c) thereof), all Senior DIP Obligations and Junior DIP Obligations, which amounts were approved by the Interim Order or are approved by this Final

Order, and shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect.  Upon execution and delivery, the Senior DIP Loan Documents and the Junior DIP Loan Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates, and the Senior DIP Obligations and Junior DIP Obligations shall be due and payable, in each case, in accordance with the terms of this Final Order (subject to paragraph 22(c) hereof) and the Senior DIP Loan Documents and Junior DIP Loan Documents, respectively.

(b)     For purposes hereof, the term "Senior DIP Obligations" means all "Obligations" (or any similar term that has a comparable meaning) as defined in the Senior DIP Credit Agreement, and shall include, without limitation, principal, interest, fees, costs, premiums, original issue discount, expenses, charges, prepayment premiums or similar amounts, any obligations in respect of indemnity claims, whether contingent or absolute, or any other amounts that are or may become due under the Senior DIP Loan Documents, including the Commitment Letter and the Fee Letter, in each case, whether or not such obligations arose before or after the Petition Date, as such amounts become earned, due and payable under the Senior DIP Loan Documents, without the need to obtain further Court approval.  For purposes hereof, the term "Junior DIP Obligations" means all "Obligations" (or any similar term that has a comparable meaning) as defined in the Junior DIP Credit Agreement, and shall include, without limitation, principal, interest, fees, costs, premiums, original issue discount, expenses, charges, prepayment premiums or similar amounts, any obligations in respect of indemnity claims, whether contingent or absolute, or any other amounts that are or may become due under the Junior DIP Loan Documents whether or not such obligations arose before or after the Petition Date, as such amounts become earned, due and payable under the Junior DIP Loan Documents, without the need to obtain

SC1:5275465.11

further Court approval.  The rights and remedies, and priority of payments, as between the Senior DIP Obligations and the Junior DIP Obligations are set forth in this Final Order, which provisions shall govern notwithstanding anything to the contrary in any Senior DIP Loan Documents or Junior DIP Loan Documents.  For purposes hereof, the term "DIP Obligations" means the Senior DIP Obligations and the Junior DIP Obligations.

(c)     All outstanding RBL Letters of Credit were deemed reissued as DIP Letters of Credit under the Senior DIP Facility pursuant to the Interim Order and such deemed reissuance is hereby ratified on a final basis.

(d)     In addition, pursuant to the Interim Order, the Debtors were authorized to pay to each Junior DIP Lender an Exit Premium  (the "Exit Premium") in an amount equal to 2.50% of the aggregate principal amount of such Junior DIP Lender's allocated share of the Junior DIP Facility commitments in effect on the closing date of the Junior DIP Facility (the "Junior DIP Facility Closing Date") (prior to the funding the loans thereunder), which Exit Premium shall be payable by the Debtors in common stock of the reorganized Debtors solely on the effective date of the Plan (as defined in the Restructuring Support Agreement) at  a price per share corresponding to the Set-Up Equity Value  (as defined in the Restructuring Support Agreement); *provided*, that the Exit Premium shall be payable without prejudice to Ares' rights under the Restructuring Support Agreement.  The Exit Premium was fully earned on the Junior DIP Facility Closing Date and shall be payable on the effective date of the Plan (as defined in the Restructuring Support Agreement) but shall not be payable in any circumstance other than on the Plan Effective Date (as defined in the Restructuring Support Agreement).  The authorization of the Exit Premium shall be subject to Section 364(e) and the applicable provisions of this Final Order to the same extent as the authorization of the other terms of the Junior DIP Facility.

3.      <u>Authorization to Borrow</u>.  The Debtors are authorized to borrow the full amount of the Senior DIP Loans from the Senior DIP Lenders under the Senior DIP Facility, issue DIP Letters of Credit and use Senior DIP Loans under the New Money Subfacility to pay any reimbursement obligations in respect of any drawn DIP Letters of Credit (and the DIP Guarantors are hereby authorized on a final basis to unconditionally guarantee, on a joint and several basis, the repayment of the Senior DIP Facility), in each case subject to the terms and conditions set forth in this Final Order and the Senior DIP Loan Documents.  Under the Interim Order the Debtors were also authorized to borrow (and such borrowing is hereby ratified on a final basis) the full amount of the Junior DIP Loans ($650,000,000) from the Junior DIP Lenders under the Junior DIP Facility (and the DIP Guarantors were authorized, under the Interim Order, and, pursuant to this Final Order are hereby authorized on a final basis, to unconditionally guarantee, on a joint and several basis, the repayment of the Junior DIP Facility), subject to the terms and conditions set forth in this Final Order and the Junior DIP Loan Documents.  Upon entry of the Interim Order, the Debtors were authorized and directed to use the proceeds of the Senior Roll-Up Subfacility ($82,871,057.00) and the Junior DIP Facility on the closing date of the Senior DIP Facility and the Junior DIP Facility to repay the outstanding RBL Loans, which repayment was subject to paragraph 29 thereof, and such authorization and direction is hereby ratified on a final basis by this Final Order. The Senior DIP Secured Parties and Junior DIP Secured Parties shall have no obligation to make any loan or advance under the respective DIP Loan Documents or, with respect to the Senior DIP Secured Parties, issue any DIP Letter of Credit unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with such DIP Loan Documents.

27

4.      DIP Obligations.  This Final Order and the Senior DIP Loan Documents and the

Junior DIP Loan Documents shall evidence the Senior DIP Obligations and Junior DIP Obligations

respectively, which DIP Obligations shall, upon execution of the Senior DIP Loan Documents and

Junior DIP Loan Documents, as applicable, be valid, binding and enforceable against the Debtors,

their estates and any successors thereto, including, without limitation, any estate representative or

trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy

Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding

or related to any of the foregoing, and/or upon the dismissal of any of the Chapter 11 Cases or any

such successor cases (collectively, the "Successor Cases"), and their creditors and other parties-

in-interest, in each case, in accordance with the terms of this Final Order and the applicable DIP

Loan Documents.  All obligations incurred, payments made, and transfers or grants of security and

liens set forth in the Interim Order, this Final Order and/or the DIP Loan Documents by any Debtor

are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent

value, and are granted contemporaneously with the making of the loans and/or commitments and

other financial accommodations secured thereby.  Subject to paragraph 29 hereof with respect to

the repayment of the Prepetition RBL Obligations, no obligation, payment, transfer, or grant of

security or lien hereunder and/or under any DIP Loan Documents (including any Senior DIP

Obligation, Junior DIP Obligations or DIP Liens) shall be stayed, restrained, voidable, avoidable,

or recoverable, under the Bankruptcy Code or under any applicable law (including, without

limitation, under sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any

applicable state Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance,

reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable,

28

contractual or otherwise), counter-claim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

      5.    <u>DIP Liens</u>.

      (a)    As security for the Senior DIP Obligations, immediately upon the date of this Final Order, and effective as of the Petition Date, the Senior DIP Agent, for the benefit of itself and each of the other Senior DIP Secured Parties, is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (collectively, the "<u>Senior DIP Liens</u>") on all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all of the Senior DIP Obligations.  Subject in all respects to the priorities and relative rights set forth herein, as security for the Junior DIP Obligations, immediately upon entry of the Interim Order (and ratified on a final basis by the Final Order), and effective as of the Petition Date, the Junior DIP Agent, for the benefit of itself and each of the other Junior DIP Secured Parties, was granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (collectively, the "<u>Junior DIP Liens</u>", together with the Senior DIP Liens, the "<u>DIP Liens</u>") on  all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all of the Junior DIP Obligations.

      (b)    The term "<u>DIP Collateral</u>" means, without limitation, all assets and properties (whether tangible, intangible, real, personal or mixed) of the Debtors, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, including, without limitation, all of the

29

Debtors' rights, title and interest in:  (i) all Prepetition Collateral (including any Cash Collateral); (ii) all cash and cash equivalents; (iii) all funds in any deposit account, securities account or other account of the Debtors and all money, cash, cash equivalents, instruments and other property deposited therein or credited thereto from time to time; (iv) all accounts and other receivables; (v) all contract rights;  (vi) all instruments, documents and chattel paper;  (vii) all securities (whether or not marketable); (viii) all goods, as-extracted collateral, furniture, equipment, inventory and fixtures; (ix) all real property interests;  (x) all interests in leaseholds, (xi) all franchise rights; (xii) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (xiii) all general intangibles, tax or other refunds, or insurance proceeds; (xiv) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets;  (xv) all investment property;  (xvi) all supporting obligations; (xvii) all letters of credit issued to the Debtors and letter of credit rights; (xviii)  commercial tort claims, claims and causes of action and all substitutions; (xix) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records); (xxi) to the extent not covered by the foregoing, all other assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; (xxii) all oil reserves; (xxiii) all proceeds and products of each of the foregoing clauses (i)–(xxii) and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; and (xxiv) all  proceeds  or  property  recovered  in  connection  with  actions  under  chapter 5  of  the Bankruptcy Code ("Avoidance Actions"); *provided,* that the DIP Collateral shall not include any

property that would have been Excluded Property (as defined in the Senior DIP Credit Agreement) prior to giving effect to this Final Order.

(c)    To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the grant, attachment or perfection of DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Secured Parties in accordance with the terms of the applicable DIP Loan Documents and this Final Order or in favor of the Prepetition Secured Parties in accordance with this Final Order.

6.    <u>Priority of Senior DIP Liens</u>.

(a)    The Senior DIP Liens shall have the following priorities:

(i)    pursuant to section 364(c)(2) of the Bankruptcy Code, the Senior DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such post-petition perfection is permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve Out, including without limitation, any and all unencumbered cash, hydrocarbons and other inventory generated or produced after the Petition Date, accounts receivable, inventory, general intangibles, contracts, securities, chattel

31

paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of the Debtors and the proceeds of all of the foregoing (collectively, such DIP Collateral, "Unencumbered Assets");

(ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, the Senior DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected junior liens on and security interests in all DIP Collateral other than Prepetition Collateral, that on or as of the Petition Date is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve Out and such Permitted Prior Liens; and

(iii)    pursuant to section 364(d)(1) of the Bankruptcy Code, the Senior DIP Liens shall be valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all DIP Collateral that also constitutes Prepetition Collateral, wherever located, which senior priming liens and security interests in favor of the Senior DIP Agent shall prime and be senior to each of the Prepetition Liens, and shall be subject only to the Carve Out.

(b)    Except as expressly set forth herein, the Senior DIP Liens and the Senior Superpriority DIP Claims:  (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is

32

avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

7.     <u>Priority of Junior DIP Liens</u>.

(a)     The Junior DIP Liens shall have the following priorities:

(i)   pursuant to section 364(c)(2) of the Bankruptcy Code, the Junior DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected second priority liens on and security interests in all Unencumbered Assets, subject only to the Carve Out, the Senior DIP Liens and RBL Adequate Protection Liens (as defined below);

(ii)     pursuant to section 364(c)(3) of the Bankruptcy Code, the Junior DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected junior liens on and security interests in all DIP Collateral other than Prepetition Collateral, that on or as of the Petition Date is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve Out, such Permitted Prior Liens, the Senior DIP Liens and any RBL Adequate Protection Liens; and

(iii)     pursuant to section 364(d)(1) of the Bankruptcy Code, the Junior DIP Liens shall be valid, enforceable, non-avoidable automatically and fully perfected second priority senior priming liens on and security interests in all DIP Collateral that also constitutes Prepetition Collateral, wherever located, which senior priming liens and security interests in favor of the Junior DIP Agent shall prime and be senior to each of the Prepetition Liens (other than any liens

33

securing the Prepetition RBL Obligations), and shall be subject only to the Carve Out, Permitted Prior Liens, the Senior DIP Liens and liens securing the Prepetition RBL Obligations.

(b)      Except as expressly set forth herein (including paragraph 22(c) hereof), the Junior DIP Liens and the Junior Superpriority DIP Claims:  (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

8.      Superpriority DIP Claims.

(a)      Senior Superpriority Claims. Subject only to the Carve Out, immediately upon entry of this Final Order, and effective as of the Petition Date, the Senior DIP Agent, for itself and for the benefit of the Senior DIP Lenders, is hereby granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "Senior Superpriority DIP Claims"), on account of the Senior DIP Obligations, (a) with priority over any and all administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses, unsecured claims, or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1),

365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (b) which shall at all times be senior to the rights of the Debtors or their estates, and any trustee appointed in the Chapter 11 Cases or any Successor Cases to the extent permitted by law.  The Senior Superpriority DIP Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis.

(b)    Junior Superpriority Claims. Subject only to the Carve Out, the Senior Superpriority Claims and the RBL Adequate Protection Claims, immediately upon entry of this Final Order, and effective as of the Petition Date, the Junior DIP Agent, for itself and for the benefit of the Junior DIP Lenders, is hereby granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "Junior Superpriority DIP Claims", and together with the Senior Superpriority DIP Claims, the "Superpriority DIP Claims"), on account of the Junior DIP Obligations, (a) with priority over any and all administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses, unsecured claims, or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (b) which shall at all

35

SC1:5275465.11

times be senior to the rights of the Debtors or their estates, and any trustee appointed in the Chapter 11 Cases or any Successor Cases to the extent permitted by law. The Junior Superpriority DIP Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis.

9.      Use of DIP Facility Proceeds. From and after the Closing Date, the Debtors shall be permitted to use the proceeds of the DIP Facilities and Cash Collateral only for the following purposes, in each case, solely in accordance with and subject to this Final Order, the DIP Loan Documents and the Approved Budget (subject to Permitted Variances): (a) to pay interest, fees, costs and expenses related to the DIP Loans; (ii) to pay the reasonable, documented and invoiced fees, costs and out-of-pocket expenses of the estate professionals retained in the Chapter 11 Cases and approved by the Court (the "Estate Professionals"); (iii) to pay the fees, costs, disbursements and out-of-pocket expenses of the DIP Secured Parties to the extent provided by the respective DIP Loan Documents; (iv) to make all permitted payments of costs of administration of the Chapter 11 Cases; (v) to pay such prepetition expenses as are consented to in writing by the Senior DIP Agent and the Majority Junior DIP Lenders (as defined below) and approved by the Court; (vi) to satisfy any adequate protection obligations owing under this Final Order; (vii) to fully repay the Prepetition RBL Obligations; and (viii) for general corporate and working capital purposes of the Debtors during the Chapter 11 Cases.

10.     Authorization to Use Cash Collateral. The Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions of the DIP Loan Documents and this Final Order, provided that the Prepetition Secured Parties are granted the Adequate Protections as hereinafter set forth. Nothing

36

in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted under this Final Order and the DIP Loan Documents and in accordance with the Approved Budget (subject to Permitted Variances).  The Prepetition Liens in the Prepetition Collateral, subject to the Intercreditor Agreements, shall continue to attach to the Cash Collateral irrespective of the commingling of the Cash Collateral with other cash of the Debtors (if any) following the Petition Date.  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Obligations, or the extent, validity, enforceability or perfected status of the Prepetition Liens.

11.     <u>Adequate Protection</u>.  In consideration for the Debtors' use of the Prepetition Collateral (including Cash Collateral), and to protect the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral, the Prepetition Secured Parties shall receive, subject to the Intercreditor Agreements, the following adequate protection:

(a)     *RBL Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Senior Secured Collateral Agent, for the benefit of the Prepetition RBL Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "<u>RBL Adequate Protection Liens</u>") with respect to any remaining unpaid portion of any Prepetition RBL Obligations (including any indemnity claims arising after the Petition Date and any Prepetition

37

RBL Obligations subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid and the liens securing the Prepetition RBL Obligations shall not have been avoided), solely to the extent of any Diminution in Value, which security interests and liens will be junior only to the Senior DIP Liens, the Permitted Prior Liens and the Carve Out, and shall be senior in priority to all other liens, including the Junior DIP Liens, the FLMO Adequate Protection Liens (as defined below), the FLLO Adequate Protection Liens (as defined below), the Second Lien Adequate Protection Liens (as defined below) and the Prepetition Liens; *provided*, that the RBL Adequate Protection Liens, the rights and remedies with respect thereto and the right to receive DIP Collateral and proceeds therefrom shall be subject in all respects to the terms and conditions of the Collateral Agency Agreement, and, without limiting the foregoing or any other terms of the Collateral Agency Agreement, any DIP Collateral proceeds distributed on account of the RBL Adequate Protection Liens shall be made in accordance with the Allocation Provisions contained in Section 3.06 of the Collateral Agency Agreement. Except for with respect to the Senior DIP Liens, the Permitted Prior Liens and the Carve Out, the Senior Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition RBL Obligations are discharged. The RBL Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the RBL Adequate Protection Liens.

SC1:5275465.11

(b)     *RBL Adequate Protection Claim*.   Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition RBL Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted an allowed superpriority administrative expense claim (the "RBL Adequate Protection Claim") with respect to any remaining unpaid portion of any Prepetition RBL Obligations (including any indemnity claims arising after the Petition Date and any Prepetition RBL Obligations subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid and the liens securing the Prepetition RBL Obligations shall not have been avoided), solely to the extent of any Diminution in Value, which claim shall be junior to the Senior Superiority DIP Claims and the Carve Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.   The RBL Adequate Protection Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be against each Debtor on a joint and several basis.   Except for the Senior Superiority DIP Claims and the Carve Out, the RBL Adequate Protection Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates

39

and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition RBL Obligations are paid in full.

(c)     *RBL Interest*.  As further adequate protection for the Prepetition RBL Secured Parties, the Debtors paid, or, in respect of clause (ii) below, shall pay to the Prepetition RBL Agent for the ratable benefit of the Prepetition RBL Lenders, (i) no later than the earlier of (x) three (3) business days after entry of the Interim Order and (y) the closing date of the DIP Facilities, all accrued and unpaid interest, fees and costs due and payable under the Prepetition RBL Loan Documents as of such earlier date, in each case, calculated based on the applicable non-default rate set forth in the Prepetition RBL Credit Agreement; and (ii) to the extent any Prepetition RBL Obligations remain outstanding following the date described in the foregoing clause (i) (including any amount that is outstanding after any Prepetition RBL Obligations are reinstated), on the last business day of each calendar month beginning the last business day of July, all accrued and unpaid postpetition interest, fees and costs due and payable under the Prepetition RBL Loan Documents, in each case, calculated based on the ABR non-default rate as set forth in the Prepetition RBL Credit Agreement.  All parties' rights are reserved as to whether any interest paid pursuant to the foregoing clause (ii) shall be subject to recharacterization by the Court as payment of principal to the extent the Prepetition RBL Obligations are determined to be under-secured for purposes of section 506(b) of the Bankruptcy Code.

(d)     *Prepetition Fees and Expenses*.  The Debtors shall pay all prepetition and postpetition reasonable and documented fees, costs and expenses incurred by (i) the Prepetition RBL Agent, including all reasonable and documented fees and expenses of Simpson Thacher & Bartlett LLP ("Simpson Thacher"), Norton Rose Fulbright US LLP ("Norton Rose Fulbright"),

40

Opportune LLP ("Opportune") and such other consultants or other professionals as may be retained by the Prepetition RBL Agent in accordance with the terms of the Prepetition RBL Credit Agreement, (collectively, the "RBL Agent Professionals"), (ii) one primary counsel and one local counsel retained by the Prepetition Senior Secured Collateral Agent, (iii) the Prepetition FLMO Term Loan Agent, including all reasonable and documented fees and expenses of Emmet, Marvin & Martin LLP ("Emmet Marvin"), (iv) the Prepetition FLLO Term Loan Agent, including all reasonable and documented fees and expenses of Emmet Marvin, (v) the Junior DIP Agent, including all documented fees and expenses of Ropes & Gray LLP ("Ropes"), (vi) the Ad Hoc First Lien Group (including all reasonable and documented fees and expenses of Davis Polk & Wardwell LLP ("Davis Polk"), Evercore Inc. ("Evercore"), Haynes and Boone, LLP ("Haynes and Boone"), Cox, Castle & Nicholson LLP ("Cox Castle"), Trimeric Corporation ("Trimeric"), Cornerstone Engineering, Inc. ("Cornerstone"), ERM Consulting and Engineering Inc. ("ERM"), Spencer Stuart ("Spencer Stuart") and Rapp & Krock, PC ("Rapp & Krock," collectively, the "Ad Hoc First Lien Group Professionals")), (vii) Ares, including all reasonable and documented fees and expenses of incurred by Ares in connection with the Debtors' restructuring, including, but not limited to, Kirkland & Ellis LLP, Lazard, Ramboll Group A/S, E3 Consulting, Netherland, Sewell & Associates, Inc., Brownstein Hyatt Farber Schreck, LLP, Mayer Brown LLP, Capstone LLC, Lockston Companies, and Petru Corporation, and (viii) the Crossover Ad Hoc Group (as defined in the Amended and Restated Restructuring Support Agreement, dated as of July 25, 2020 by and among CRC, the Consenting 2016 Term Loan Lenders, the Consenting 2017 Term Loan Lenders, the Consenting Second Lien Noteholders and Ares) (including all reasonable and documented fees and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), Stephens Inc. ("Stephens"), Porter Hedges LLP ("Porter Hedges") and Casso & Sparks, LLP ("Casso &

41

Sparks")).  The Debtors shall continue to pay any such fees, costs and expenses incurred by the Prepetition RBL Agent, including the reasonable and documented fees and expenses of the RBL Agent Professionals (including any such fees, costs and expenses incurred defending any Challenge) notwithstanding the repayment of the Prepetition RBL Obligations.  The invoices for the reasonable and documented fees and expenses to be paid pursuant to this paragraph shall not be required to comply with the U.S. Trustee guidelines and shall not be required to contain time detail (and may contain redactions of privileged, confidential or otherwise sensitive information), and shall be provided to counsel to the Debtors, with a copy to the U.S. Trustee and counsel to the Committee (collectively, the "Fee Notice Parties").  If no objection to payment of the requested fees and expenses are made, in writing and delivered to the applicable professionals and counsel to the Debtors (which delivery may be made via electronic mail) by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Notwithstanding the foregoing, by the Interim Order, the Debtors were authorized and directed to pay on the Closing Date the reasonable and documented fees, costs and expenses of the RBL Agent Professionals and Ad Hoc First Lien Group Professionals incurred on or prior to such date without the need to provide notice to any other party or otherwise comply with the procedures set forth in this paragraph.

SC1:5275465.11

(e)     *FLMO Adequate Protection Liens*.   To the extent of any Diminution in Value, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Senior Secured Collateral Agent, for the benefit of the Prepetition FLMO Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "Prepetition FLMO Adequate Protection Liens"), which security interests and liens will be junior only to the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens and the Carve Out, and shall be senior in priority to all other liens, including the FLLO Adequate Protection Liens, the Second Lien Adequate Protection Liens) and the Prepetition Liens; *provided*, that the FLMO Adequate Protection Liens, the rights and remedies with respect thereto and the right to receive DIP Collateral and proceeds therefrom shall be subject in all respects to the terms and conditions of the Collateral Agency Agreement, and, without limiting the foregoing or any other terms of the Collateral Agency Agreement, any DIP Collateral proceeds distributed on account of the FLMO Adequate Protection Liens shall be made in accordance with the Allocation Provisions contained in Section 3.06 of the Collateral Agency Agreement.  Except for with respect to the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens and the Carve Out, the FLMO Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition FLMO Obligations are paid in full.  The FLMO Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of

43

the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the FLMO Adequate Protection Liens.

(f)     *FLMO Adequate Protection Claim.*   To the extent of any Diminution in Value, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition FLMO Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, are hereby granted an allowed superpriority administrative expense claim (the "FLMO Adequate Protection Claim"), which claim shall be junior to the Superpriority DIP Claims, the RBL Adequate Protection Claim and the Carve Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.   The FLMO Adequate Protection Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral.   Except for the Superpriority DIP Claims, the RBL Adequate Protection Claim and the Carve Out, the FLMO Adequate Protection Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the

44

Chapter 11 Cases or any Successor Cases until such time as the Prepetition FLMO Obligations are paid in full.

(g)     *FLLO Adequate Protection Liens*.  To the extent of any Diminution in Value, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition FLLO Term Loan Agent, for the benefit of itself and the other Prepetition FLLO Secured Parties, immediately upon the entry of this Final Order and effective as of the Petition Date, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "FLLO Adequate Protection Liens"), which security interests and liens will be junior only to the Carve Out, the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens and the FLMO Adequate Protection Liens, and shall be senior in priority to all other liens, including the Second Lien Adequate Protection Liens and the Prepetition Liens; *provided*, that the RBL Adequate Protection Liens, the FLMO Adequate Protection Liens and the FLLO Adequate Protection Liens, the rights and remedies with respect thereto and the right to receive DIP Collateral or proceeds therefrom shall be subject in all respects to the terms and conditions of the Pari Passu Intercreditor Agreement, and, without limiting the foregoing or any other terms of the Pari Passu Intercreditor Agreement, any DIP Collateral proceeds distributed on account of the FLLO Adequate Protection Liens shall be made in accordance with the Allocation Provisions contained in Section 6.01 of the Pari Passu Intercreditor Agreement.  Except for with respect to the Carve Out, the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens, the FLMO Adequate Protection Liens and the FLLO Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors

45

thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition FLLO Obligations are paid in full. The FLLO Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the FLLO Adequate Protection Liens.

(h)     *FLLO Adequate Protection Claim.*   To the extent of any Diminution in Value, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition FLLO Term Loan Agent, for the benefit of itself and the other the Prepetition FLLO Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted an allowed superpriority administrative expense claim (the "FLLO Adequate Protection Claim"), which claim shall be junior to the Superpriority DIP Claims, the RBL Adequate Protection Claim, the FLMO Adequate Protection Claim and the Carve Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The FLLO Adequate Protection Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral. Except for the Superpriority DIP Claims, the RBL Adequate

46

Protection Claim, the FLMO Adequate Protection Claim and the Carve Out, the FLLO Adequate Protection Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition FLLO Obligations are paid in full.

(i)     *Second Lien Adequate Protection Liens*.  To the extent of any Diminution in Value, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Second Lien Collateral Trustee, for the benefit of itself and the other Prepetition Second Lien Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "Second Lien Adequate Protection Liens", and together with the RBL Adequate Protection Liens, the FLMO Adequate Protection Liens and the FLLO Adequate Protection Liens, the "Adequate Protection Liens"), which security interests and liens will be junior to the Carve Out, the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens, the FLMO Adequate Protection Liens, the FLLO Adequate Protection Liens, the Prepetition Senior Liens and the Prepetition FLLO Liens, and shall be senior in priority to all other liens.  Except with respect to the Carve Out, the DIP Liens, the Permitted Prior Liens, the RBL Adequate Protection Liens, the FLMO Adequate Protection Liens the FLLO Adequate Protection Liens, the Prepetition Senior Liens and the Prepetition FLLO Liens, the Second Lien Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors

47

thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Second Lien Note Obligations are paid in full. The Second Lien Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Second Lien Adequate Protection Liens.

> (j)     Second Lien Adequate Protection Claim.  To the extent of any Diminution in Value, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Second Lien Collateral Trustee, for the benefit of itself and the other Prepetition Second Lien Secured Parties, immediately upon entry of this Final Order and effective as of the Petition Date, is hereby granted an allowed superpriority administrative expense claim (the "Second Lien Adequate Protection Claim", and together with the RBL Adequate Protection Claim, the FLMO Adequate Protection Claim and the FLLO Adequate Protection Claim, the "Adequate Protection Claims"), which claim shall be junior to the Superpriority DIP Claims, the RBL Adequate Protection Claim, the FLMO Adequate Protection Claim, the FLLO Adequate Protection Claim and the Carve Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  The Second Lien Adequate Protection Claim shall, for purposes of section

1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral.  Except for the Superpriority DIP Claims, the RBL Adequate Protection Claim, the FLMO Adequate Protection Claim, the FLLO Adequate Protection Claim and the Carve Out, the Second Lien Adequate Protection Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Second Lien Obligations are paid in full.

        (k)     *Additional Adequate Protection*.

        (i)     <u>Information; Access to Books and Records</u>.  The Debtors will provide to the Prepetition RBL Agent (so long the Prepetition RBL Obligations have not been discharged), the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent, the Prepetition Second Lien Collateral Trustee (and subject to any restrictions on posting material non-public information to public lenders set forth in the Prepetition Debt Documents), and the Committee any and all reports and information required to be delivered pursuant to the DIP Credit Agreement, including any Updated Budget and variance reports.

        (ii)     <u>Maintenance of Collateral.</u>  The Debtors shall continue to maintain and insure the Prepetition Collateral in amounts and for the risks, and by the entities, as required under the Prepetition RBL Documents (as long as the Prepetition RBL Obligations have not been

discharged), the Prepetition FLMO Tem Loan Documents the Prepetition FLLO Term Loan Documents and the Prepetition Second Lien Documents.

(l)      <u>Termination of Consent to Use Cash Collateral</u>.  Upon indefeasible payment in full of all DIP Obligations, the following events shall permit Majority Prepetition FLMO Secured Parties to immediately seek to terminate the Debtors' right to use Cash Collateral pursuant to this Final Order, and to immediately seek relief from the automatic stay to proceed to protect, enforce and exercise all other rights and remedies provided under the Prepetition FLMO Term Loan Documents or applicable law:  (1) the Debtors fail to satisfy any Milestone in Section 10.15 of the Senior DIP Credit Agreement; (2) the Debtors fail to update the Approved Budget as contemplated by the Senior DIP Credit Agreement or to comply with the provisions relating to permitted variances from such Approved Budget; (3) the Debtors file, support, make a written proposal or counterproposal to any party relating to, or take any other similar action in furtherance of a chapter 11 plan, sale process or other restructuring transaction that is not approved by the Required FLMO Term Lenders (as defined below), unless such plan, sale process or other restructuring transaction provides for the indefeasible payment on the effective date thereof of all claims on account of the Prepetition FLMO Obligations in full in cash (in each case, a "<u>Non-Consensual Action</u>"); or (4) the Debtors provide notice to counsel to the Ad Hoc First Lien Group (with a copy to the Committee) of any such Non-Consensual Action (the "<u>Non-Consensual Restructuring Notice</u>").  The Debtors shall provide a Non-Consensual Restructuring Notice to counsel to the Ad Hoc First Lien Group (with a copy to the Committee) not less than seven (7) days before taking any Non-Consensual Action  *provided*, that the Debtors' obligation to provide such notice will terminate in the event that either (x) the Restructuring Support Agreement has been terminated by the Debtors due to a material breach by the Required Consenting Creditors or

(y) the Backstop Commitment Agreement has been terminated due to the Backstop Parties terminating their Backstop Commitments (each, as defined in the Restructuring Support Agreement).

(m)     *Adequate Protection Reservation*.  The receipt by the Prepetition Secured Parties of the adequate protection provided pursuant to this Final Order shall not be deemed an admission that the interests of the Prepetition Secured Parties are indeed adequately protected. Further, this Final Order shall not prejudice or limit the rights of the Prepetition RBL Secured Parties (so long any Prepetition RBL Obligations are outstanding) or the other Prepetition Secured Parties (subject to the terms of the applicable Intercreditor Agreements) to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, including without limitation in the event of termination of the Restructuring Support Agreement or any failure of any of the milestones in the Restructuring Agreement to be timely achieved, <u>provided</u> that (a) any such additional or alternative adequate protection approved by the Court in respect of the Prepetition RBL Obligations shall at all times be subordinate and junior to the Carve Out, the Senior DIP Obligations and the Senior DIP Liens granted under this Final Order and the DIP Loan Documents and (b) any such additional or alternative adequate protection approved by the Court in respect of the Prepetition FLMO Obligations, Prepetition FLLO Obligations and Prepetition Second Obligations shall at all times be subordinate and junior to the Carve Out, the Superpriority DIP Claims, the DIP Obligations and the DIP Liens granted under this Final Order and the DIP Loan Documents.  Without limiting the foregoing, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate for any Diminution in Value during any of the Chapter 11 Cases.

51

12.  <u>Amendments</u>.  (x) The Debtors, the Senior DIP Agent and the Senior DIP Secured Parties, were, by the Interim Order, and hereby are authorized on a final basis to enter into the Senior DIP Loan Documents and implement, in accordance with the terms of the Senior DIP Loan Documents one or more amendments, waivers, consents or other modifications to and under the Senior DIP Loan Documents, in each case in such form as the Debtors, the Senior DIP Agent and the Majority Lenders (as defined in the Senior DIP Credit Agreement) (the "<u>Majority Senior DIP Lenders</u>") may agree, and no further approval of the Court shall be required for non-material amendments, waivers, consents or other modifications to and under the Senior DIP Loan Documents (and any reasonable fees and expenses paid in connection therewith); and (y) the Debtors, the Junior DIP Agent and the Junior DIP Secured Parties, were, by the Interim Order, and hereby are authorized on a final basis to enter into the Junior DIP Loan Documents and implement, in accordance with the terms of the Junior DIP Loan Documents one or more amendments, waivers, consents or other modifications to and under the Junior DIP Loan Documents, in each case in such form as the Debtors, the Junior DIP Agent and the Majority Lenders (as defined in the Junior DIP Credit Agreement) (the "<u>Majority Junior DIP Lenders</u>") may agree, and no further approval of the Court shall be required for non-material amendments, waivers, consents or other modifications to and under the Junior DIP Loan Documents (and any reasonable fees and expenses paid in connection therewith); *provided*, *however*, that in the case of both of the foregoing clauses (x) and (y), the Debtors shall provide notice of any amendment, waiver, consent or other modification under the Senior DIP Loan Documents or Junior DIP Loan Documents, as applicable, to counsel to the Committee, counsel to the applicable non-amending DIP Agent, counsel to the applicable non-amending DIP Secured Parties, and the United States Trustee five (5) business days prior to the effective date thereof to the extent practicable.  If no objections are timely received (or

52

if the U.S. Trustee, such DIP Agent, such DIP Secured Parties or the Committee indicate via electronic mail or otherwise that they have no objection) to an amendment within five (5) business days from the date of delivery of such notice, the Debtors may proceed to execute such amendment, which shall become effective immediately upon execution.  The Committee shall have the right to seek relief on an expedited basis in the event the Committee objects to any such amendment, and the Debtors, the DIP Agent and the DIP Secured Parties shall be deemed to have consented to the Court's consideration of such an objection on an expedited basis.

13.     Budget Covenants.

(a)     *Initial Budget and Updated Budget.*   The use of Cash Collateral and borrowings and other extensions of credit under the DIP Loan Documents shall be in accordance with the Approved Budget (subject to Permitted Variances). The Debtors have prepared and delivered to the Senior DIP Agent and Majority Junior DIP Lenders, and the Senior DIP Agent and Majority Junior DIP Lenders have approved, an initial budget, a copy of which is attached to the Interim Order as Exhibit 3 (the "Initial Budget"), which reflects the Debtors' anticipated cash receipts and all anticipated necessary and required disbursements of the DIP Borrower and its restricted subsidiaries, including (i) individual line items for "Total Receipts," "Total Operating Disbursements," "Professional Fees," "Operating AP Payments," "Payroll/Payroll Taxes," and "Elk Hills Power Capacity/Reimbursement" and (ii) anticipated uses of the DIP Facilities for such period, for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.  The Initial Budget, and each Updated Budget (as defined below), once approved in accordance herewith, shall be deemed the "Approved Budget" for all purposes hereof until superseded by another Approved Budget pursuant to the provisions set forth below.

53

(b)     *Updated Budget*.  Beginning on July 28, 2020, and every four (4) weeks thereafter while any DIP Obligations are outstanding, the Debtors shall prepare in good faith and deliver to the DIP Agents, the DIP Agents' professional advisors, the professional advisors to the Majority Junior DIP Lenders, and the Committee an updated 13-week cash flow forecast consistent in form and substance with the Initial Budget and otherwise in form and substance acceptable to the Senior DIP Agent, the Majority Senior DIP Lenders, and reasonably acceptable to the Majority Junior DIP Lenders, as and to the extent required by the DIP Credit Agreements (each such updated forecast, an "Updated Budget").  Upon the reasonable request of the Committee, the Debtors shall share the current draft of each Updated Budget and respond to any question of the Committee with respect thereto.  Each Updated Budget shall be accompanied by such supporting documentation in accordance with the terms of the DIP Credit Agreements.  For the avoidance of doubt, no amendment, modification or update to an Approved Budget shall be effective without the approval of the Senior DIP Agent, Majority Senior DIP Lenders and, so long as no Senior DIP Event of Default (as defined below) has occurred and is continuing, the Majority Junior DIP Lenders, and in accordance with the terms of the applicable DIP Credit Agreements.

(c)     *Variance Reporting*.  The Debtors are subject to the variance reporting and testing as set forth in, and in accordance with the terms of, the DIP Credit Agreements. Concurrently with the delivery of each Updated Budget, the Debtors shall deliver to the DIP Agents, the DIP Agents' professional advisors, the professional advisors to the Majority Junior DIP Lenders, and the Committee the weekly cash balance reporting and variance reporting required under the DIP Credit Agreements.  Variances in excess of the Permitted Variance (as defined in each DIP Credit Agreement) from the Approved Budget, and any proposed changes to the Approved Budget, shall be subject to written agreement by the Debtors and the Senior DIP

54

Agent and, so long as no Senior DIP Event of Default has occurred and is continuing, the Majority Junior DIP Lenders, in each case without further notice, motion or application to, order of, or hearing before, the Court.

14.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtors to grant the DIP Liens and the Superpriority DIP Claims, and to perform such acts as the DIP Agents or the Majority Senior DIP Lenders or Majority Junior DIP Lenders may reasonably request to assure the perfection and priority of the DIP Liens; (b) the Debtors to take all appropriate action to grant the Adequate Protection Liens and the Adequate Protection Claims set forth herein, and to take all appropriate action to ensure that the Adequate Protection Liens granted hereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations, including all the DIP Obligations, to the DIP Secured Parties and the Prepetition Secured Parties as contemplated under this Final Order and/or the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Final Order; (e) the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and/or this Final Order; (f) subject to paragraph 22 hereof, the DIP Agents and the DIP Lenders to exercise, upon the occurrence and during the continuance of an Event of Default (as defined in the Senior DIP Credit Agreement) (a "<u>Senior DIP Event of Default</u>") or an Event of Default (as defined in the Junior DIP Credit Agreement) (a "<u>Junior DIP Event of Default</u>"), subject to the Remedies Notice Period (as defined below), all rights and remedies provided for in the DIP Loan Documents and take any or all actions provided therein; (g) the Debtors to perform under the DIP Loan Documents and any and all other instruments, certificates, agreements and documents which may be required,

55

necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Final Order; and (h) the implementation of all of the terms, rights, benefits, privileges, remedies and provisions of this Final Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of, or hearing before, this Court, but subject in all respects to the terms of this Final Order.

15.     <u>Perfection of DIP Liens and Postpetition Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all security interests and liens granted herein, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of executing, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any securities or deposit account control agreement or taking possession of any possessory collateral) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Prepetition Secured Parties and the DIP Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the Senior DIP Agent, Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, without any further consent of any party, is authorized to execute, file or record, and the Senior DIP Agent, Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, as applicable, may require the execution, filing or recording, as each, in its sole discretion deems necessary, of such financing

statements, mortgages, notices of lien, and other similar documents to enable the Senior DIP Agent, the Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, as applicable, to further validate, perfect, preserve and enforce the DIP Liens or other liens and security interests granted hereunder, or perfect in accordance with applicable law or to otherwise evidence the DIP Liens and/or the Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been executed, filed or recorded as of the Petition Date; _provided_, _however_, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the Senior DIP Agent, the Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, as applicable, all such financing statements, notices, and other documents as the Senior DIP Agent, the Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, as applicable, may reasonably request.  The Senior DIP Agent, the Junior DIP Agent, the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee, each in its discretion, may file a photocopy of the Interim Order or this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments, and in

57

such event, the filing or recording office shall be authorized to file or record such photocopy of the Interim Order or this Final Order.

16. <u>Protection of DIP Lenders' Rights and Adequate Protection Liens</u>. So long as there are any DIP Obligations outstanding, the Prepetition Secured Parties (other than the Prepetition RBL Secured Parties as set forth in paragraph 22(c) hereof) shall (a) absent the written consent of the DIP Agents, have no right to, and take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Debt Documents or this Final Order or otherwise seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Prepetition Debt Documents or the Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in each of the applicable Prepetition Debt Documents), (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in full in cash of the DIP Obligations), (c) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (c), the DIP Agents file financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents and/or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing, and (d) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Prepetition RBL Agent, the Prepetition Senior Secured Collateral Agent, the Prepetition FLMO Term Loan Agent, the Prepetition FLLO Term Loan Agent and the Prepetition Second Lien Collateral Trustee shall be reimbursed upon

submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Agents and the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of Adequate Protection Liens, the Prepetition Senior Liens, the Prepetition FLLO Liens or the Prepetition Second Liens on any portion of the DIP Collateral subject to any sale or disposition approved or arranged for by any DIP Agent.

17.    Protection of DIP Lenders Rights. To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constitution Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Senior DIP Agent, the Senior DIP Secured Parties, the Junior DIP Agent and the Junior DIP Secured Parties, and such Prepetition Secured Party and the applicable Prepetition RBL Agent, Prepetition FLMO Term Loan Agent, Prepetition FLLO Term Loan Agent, or the Prepetition Second Lien Collateral Trustee shall comply with the instruction of the Senior DIP Agent, acting at the direction of the Majority Senior DIP Lenders, with respect to the exercise of such control.  To the extent that the Senior DIP Agent or any other Senior DIP Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Senior DIP Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Junior DIP Agent and the Junior DIP Secured

Parties, subject to the priorities set forth in paragraph 6 above and other terms of this Final Order; *provided*, that following the Discharge of the Senior DIP Obligations, the Senior DIP Agent shall deliver Junior DIP Agent, at the Debtors' sole cost and expense, the Prepetition Collateral or DIP Collateral in its possession together with any necessary endorsements to the extent required by the Junior DIP Documents.

18.     <u>Proceeds of Subsequent Financing</u>.   Without limiting the provisions of the immediately preceding paragraph, if the Debtors, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time prior to the indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claims, and the termination of the DIP Agents' and the DIP Lenders' obligations to extend credit under the DIP Facilities and this Final Order, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then unless otherwise agreed by the DIP Agents, proceeds in an amount sufficient to satisfy any then-outstanding DIP Obligations derived from such credit or debt shall immediately be turned over <u>first</u>, to the Senior DIP Agent to be applied to the Senior DIP Obligations pursuant to the Senior DIP Credit Agreement until the Discharge of Senior DIP Obligations (as defined below) occurs and <u>second</u> (but subject to paragraph 22(c) hereof), to the Junior DIP Agent to be applied to the Junior DIP Obligations pursuant to the Junior DIP Credit Agreement.

19.     <u>Maintenance of DIP Collateral</u>.   The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents. The Debtors shall provide the DIP Agents and their respective counsel (for distribution to the DIP

Secured Parties) with commercially reasonable evidence of such insurance upon a request to counsel for the Debtors.  Upon entry of this Final Order and to the fullest extent provided by applicable law, the DIP Agents (on behalf of the DIP Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and lender's loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral. The Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order of the Court authorizing the continued use of the cash management system.

20.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) other than in the ordinary course of business without the prior written consent of the Majority Senior DIP Lenders or as otherwise provided for in the Senior DIP Loan Documents and, so long as no Senior DIP Event of Default has occurred and is continuing, the prior written consent of the Majority Junior DIP Lenders or as otherwise provided for in the Junior DIP Loan Documents.

21.    <u>Termination Date</u>.  Each of the following shall constitute a termination event under this Final Order (each a "<u>Termination Event</u>", and the date upon which such Termination Event occurs, the "<u>Termination Date</u>"), unless waived in writing (delivery by email or other electronic means being sufficient) by both DIP Agents and the Majority Junior DIP Lenders: (a) the occurrence of the maturity date of either DIP Facility; (b) the occurrence of a Senior DIP Event of Default; or (c) the occurrence of a Junior DIP Event of Default.

22.    <u>Rights and Remedies Upon Termination Event</u>.

61

(a)     Upon the occurrence and during the continuation of a Termination Event, either DIP Agent may (and any automatic stay otherwise applicable to the DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Final Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit each DIP Agent to, upon delivery of written notice (a "Termination Notice") (including by e-mail) to lead restructuring counsel to the Debtors, lead restructuring counsel to the other DIP Agent, lead restructuring counsel to the other applicable DIP Secured Parties, lead restructuring counsel to the Committee, lead restructuring counsel to the Prepetition RBL Agent, lead restructuring counsel to the Prepetition Senior Secured Collateral Agent, lead restructuring counsel to the Prepetition FLMO Term Loan Agent, lead restructuring counsel to the Prepetition FLLO Term Loan Agent, lead restructuring counsel to the Prepetition Second Lien Collateral Trustee and the U.S. Trustee, (the "Remedies Notice Parties"), unless the Court orders otherwise prior to five (5) business days after delivery of such Termination Notice (such five (5) business day period, the "Remedies Notice Period"): (a) immediately terminate and/or revoke the Debtors' right under this Final Order and any other Senior DIP Loan Documents or Junior DIP Loan Documents, as applicable, to use any Cash Collateral; (b) terminate the applicable DIP Facility and any applicable DIP Loan Document as to any future liability or obligation of the Senior DIP Secured Parties or Junior DIP Secured Parties, as applicable, but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (c) declare all Senior DIP Obligations or Junior DIP Obligations, as applicable, to be immediately due and payable; and (d) invoke the right to charge interest at the default rate under the Senior DIP Loan Documents or Junior DIP Loan Documents, as applicable. Upon delivery of such Termination Notice by either DIP Agent, without further notice or order

62

of the Court, the DIP Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the Remedies Notice Period, automatically terminate and the DIP Secured Parties will have no obligation to provide any DIP Loans or other financial accommodations.

(b)      Following a Termination Event, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth in paragraph 22(a)), the Senior DIP Secured Parties shall be required to file a motion with the Court seeking emergency relief (the "Stay Relief Motion") on five (5) business days' notice to the Remedies Notice Parties (which shall run concurrently with the Remedies Notice Period) for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the Senior DIP Secured Parties (but not the Junior DIP Secured Parties) to: (a) freeze monies or balances in the Debtors' accounts; (b) immediately set-off any and all amounts in accounts maintained by the Debtors with the Senior DIP Agent or the Senior DIP Secured Parties against the Senior DIP Obligations, (c) enforce any and all rights against the DIP Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral, collection of accounts receivable, occupying the Debtors' premises, sale or disposition of the DIP Collateral; and (d) take any other actions or exercise any other rights or remedies permitted under this Final Order, the Senior DIP Loan Documents or applicable law. The rights and remedies of the Senior DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Senior DIP Secured Parties have under the Senior DIP Loan Documents or otherwise. If the Senior DIP Secured Parties are permitted by the Court to take any enforcement action with respect to the DIP Collateral following the hearing on the Stay Relief Motion, the Debtors shall cooperate with the Senior DIP Secured Parties in their efforts to enforce their security interest in the DIP Collateral, and shall not take or direct any entity

63

to take any action designed or intended to hinder or restrict in any respect such Senior DIP Secured Parties from enforcing their security interests in the DIP Collateral.  Until the Discharge of Senior DIP Obligations, the Junior DIP Agent and Junior DIP Secured Parties shall not have the right to exercise or enforce any rights and remedies against the Debtors or the DIP Collateral (other than as set forth in paragraph 22(a) above).  Following the Discharge of Senior DIP Obligations, the Junior DIP Agent on behalf of the Junior DIP Secured Parties may exercise the rights and remedies set forth in this paragraph 22(b) in accordance with the terms hereof.

(c)     Notwithstanding anything herein to the contrary in this Final Order or any DIP Loan Document, until the Senior DIP Obligations are indefeasibly paid in full in cash (other than (i) secured hedge obligations that, at the time of such determination, are allowed by the person to whom such secured hedge obligations are owing to remain outstanding or are not required to be repaid or cash collateralized pursuant to the provisions of any document governing such secured hedge obligations or have been assigned or novated concurrently with such payment, (ii) secured cash management obligations and (iii) contingent indemnification obligations not then due and payable), the commitments to advance credit thereunder are terminated and all issued and undrawn DIP Letters of Credit are replaced or cash collateralized in accordance with the Senior DIP Credit Agreement (collectively, the "Discharge of Senior DIP Obligations"), the Junior DIP Agent and the Junior DIP Secured Parties shall not receive or retain any payments, distributions or other amounts on account of the Junior DIP Obligations (other than the agency fees, the upfront fee, the Exit Premium and expenses payable under the Junior DIP Loan Documents and this Final Order, including professional fees and expenses), whether such payments, distributions or amounts are from proceeds of the DIP Collateral or refinancing of the Junior DIP Facility or from any other source (including debt or equity issued or distributed in connection with a plan of

64

reorganization or any proceeds of such debt or equity) and whether such payments, distributions or amounts are distributed or made in connection with or pursuant to a plan of reorganization or liquidation, sale pursuant to section 363 of the Bankruptcy Code, foreclosure or otherwise.  If the Junior DIP Agent or any Junior DIP Secured Parties receive any payments, distributions or other amounts in violation of this paragraph 22(c), then the Junior DIP Agent (to the extent the Junior DIP Agent has actual notice of such violation and has not distributed such amounts to the other Junior DIP Secured Parties) or such Junior DIP Secured Party, as applicable, shall hold such amounts in trust for the benefit of the Senior DIP Agent, the Senior DIP Secured Parties, the Prepetition RBL Agent and the Prepetition RBL Secured Parties and shall promptly turn over such amounts to the Senior DIP Agent.  Notwithstanding the foregoing, so long as a Senior DIP Event of Default has not occurred and is continuing, the Junior DIP Secured Parties shall be entitled to receive interest at the contract rate as and when due and the upfront fee in connection with the closing of the Junior DIP Facility.  For any Prepetition RBL Obligations that remain outstanding after the closing of the Junior DIP Facility, including any amount due and payable on account of indemnity claims that are Prepetition RBL Obligations and any Prepetition RBL Obligations that are subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid, the liens securing such Prepetition RBL Obligations shall be subordinate to the Senior DIP Liens; _provided_, that any such Prepetition RBL Obligations shall be (i) deemed Senior DIP Obligations for all purposes of this paragraph 22 and for purposes of the definition of Discharge of Senior DIP Obligations in paragraphs 27(b), 37, and 42 and (ii) subject to the Senior DIP Purchase Option (as defined below) (notwithstanding anything to the contrary in the Collateral Agency Agreement).  The term "Discharge of Senior

65

DIP Obligations" as used in this Final Order shall be deemed to require the repayment of such Prepetition RBL Obligations in full in cash.

(d)     The payment in full of the Prepetition RBL Obligations on and at all times following the Closing Date with the proceeds of the DIP Facilities as set forth in the DIP Loan Documents, the Interim Order and this Final Order shall constitute a "Discharge of Existing Senior Obligations" subject to, and as such term is defined in, the Collateral Agency Agreement for all purposes thereunder.

(e)     *Senior DIP Purchase Option.*  At any time upon written notice to the Senior DIP Agent (the "Senior DIP Purchase Notice"), any group of Junior DIP Lenders holding a majority in principal amount of the Junior DIP Loans or any group of Prepetition FLMO Term Loan Lenders holding a majority in principal amount of the Prepetition FLMO Term Loans (any such group, the "Senior DIP Purchasers") shall have the right, without the consent of the Debtors, to purchase from the Senior DIP Secured Parties all (but not less than all) Senior DIP Obligations (including, for the avoidance of doubt and notwithstanding anything to the contrary herein or in the Collateral Agency Agreement all Senior DIP Obligations that are refinanced, refunded, or replaced) (such right, the "Senior DIP Purchase Option") for a purchase price in an amount equal to (i) the amount of Senior DIP Obligations outstanding (including principal, fees, reasonable attorneys' fees and legal expenses (but excluding contingent indemnification obligations for which no claim or demand for payment has been made at or prior to such time)); *provided*, that "Senior DIP Obligations" shall include all contingent or actual rights and claims relating to, arising from, or in connection with the reservation of rights under paragraph 29, whether asserted as Senior DIP Obligations, Prepetition RBL Obligations, or otherwise; *provided*, *further*, that in the case of secured hedge obligations, the Senior DIP Purchasers shall cause the applicable agreements governing such hedge

66

obligations to be assigned and novated or, if such agreements have been terminated, such purchase price shall include an amount equal to the sum of any unpaid amounts then due in respect of such hedge obligations, calculated using the market quotation method and after giving effect to any netting arrangements and (ii) a cash collateral deposit in such amount as the Senior DIP Agent determines is reasonably necessary to secure the payment of any outstanding letters of credit constituting Senior DIP Obligations that may be come due and payable after such sale (but in any event in an amount not to exceed 105% of the amount then reasonably estimated by the Senior DIP Agent to be the aggregate outstanding amount of such letters of credit at such time), which cash collateral shall be (A) held by the Senior DIP Agent as security solely to reimburse the issuers of letters of credit that become due and payable after such sale and any fees and expenses incurred in connection with such letters of credit and (B) returned to the Senior DIP Purchasers (except as otherwise be required by applicable law or any order of any court or other governmental authority) promptly after the expiration or termination from time to time of all payment contingencies affecting such letters of credit. The Senior DIP Purchasers shall have twenty (20) Business Days following delivery of the Senior DIP Purchase Notice to consummate the purchase of the Senior DIP Obligations contemplated by this paragraph 22(e) and the right to purchase the Senior DIP Obligations under this paragraph 22(e) shall terminate thereafter unless such twenty (20) Business Day period is extended by the Senior DIP Agent in its sole discretion; *provided*, that if the Senior DIP Purchasers shall fail to consummate such purchase within such twenty (20) Business Day period, no Junior DIP Lenders or Prepetition FLMO Term Loan Lenders shall be permitted to exercise the Senior DIP Purchase Option until the date that is at least five (5) Business Days following the expiration of such twenty (20) Business Day period.

67

(f)     *Junior DIP Purchase Option*.  Upon written notice to the Junior DIP Agent (the "Junior DIP Purchase Notice") any group of Prepetition FLMO Term Loan Lenders holding a majority in aggregate principal amount of the Prepetition FLMO Term Loans (the "Junior DIP Purchasers") shall have the right, without the consent of the Debtors, to purchase from the Junior DIP Secured Parties all (but not less than all) Junior DIP Obligations (including, for the avoidance of doubt and notwithstanding anything to the contrary herein all Junior DIP Obligations that are refinanced, refunded, or replaced (such right, the "Junior DIP Purchase Option") for a purchase price in an amount equal to the amount of Junior DIP Obligations outstanding (including principal, fees, reasonable attorneys' fees and legal expenses (but excluding contingent indemnification obligations for which no claim or demand for payment has been made at or prior to such time)). The Junior DIP Purchasers shall have twenty (20) Business Days following delivery of the Junior DIP Purchase Notice to consummate the purchase of the Junior DIP Obligations contemplated by this paragraph 22(f) and the right to purchase the Junior DIP Obligations under this paragraph 22(f) shall terminate thereafter unless such twenty (20) Business Day period is extended by the Majority Junior DIP Lenders in their sole discretion; *provided*, that if the Junior DIP Purchasers shall fail to consummate such purchase within such twenty (20) Business Day period, no Prepetition FLMO Term Loan Lenders shall be permitted to exercise the Junior DIP Purchase Option until the date that is at least five (5) Business Days following the expiration of such twenty (20) Business Day period.

(g)     In connection with the Senior DIP Purchase Option and the Junior DIP Purchase Option, the Senior DIP Purchasers or the Junior DIP Purchasers, as applicable, shall deliver to the applicable DIP Agent any customary agreements, documents or instruments to which the applicable DIP Agent may reasonably request pursuant to which the Senior DIP Purchasers or the

68

Junior DIP Purchasers, as applicable, shall expressly assume and adopt all obligations of the applicable DIP Agent and DIP Secured Parties.

(h)     Notwithstanding anything to the contrary contained in this Final Order, upon the occurrence and continuation of Termination Event, the DIP Lenders, the Prepetition Senior Loan Parties, or their agents, may enter upon a leased premises for the purposes of exercising remedies after an Event of Default only in accordance with (a) a separate written agreement by and between the DIP Lender or Prepetition Senior Loan Parties, as applicable, and any applicable landlord; (b) pre-existing rights of the DIP Lender or Prepetition Senior Loan Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law; (c) consent of the applicable landlords; or (d) entry of an order of this Court obtained by motion of the applicable DIP Lender, Prepetition Senior Loan Parties, or their agents, on such notice to the landlord as shall be required by this Court.

23.     <u>Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  The DIP Secured Parties have acted in good faith in connection with the DIP Facilities, the DIP Loan Documents, the financing provided by the DIP Facilities, and with this Final Order, and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final Order and the record made during these Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties are entitled to the benefits and protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, reversal, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created

hereby.  Any security interests, liens or claims granted to the DIP Secured Parties arising prior to the effective date of any such modification, reversal, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

24.     <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay, in cash and on a current basis, all reasonable and documented fees, costs, disbursements and expenses of the DIP Agents and the Ad Hoc First Lien Group incurred at any time, to the extent provided by the DIP Loan Documents and this Final Order, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees and expenses, agency fees, financial advisory fees and expenses, fees and expenses of other consultants and indemnification and reimbursement of fees and expenses (including, without limitation, the reasonable and documented prepetition and postpetition fees, costs and expenses of (A) Simpson Thacher and Norton Rose Fulbright; (B) Opportune; (C) Davis Polk, Haynes and Boone, Cox Castle, Trimeric, Cornerstone, ERM, Spencer Stuart and Rapp & Krock; (D) Evercore; (E) Ropes & Gray, (F) Paul Weiss, Stephens, Porter Hedges and Casso & Sparks, and (G) any other necessary or appropriate counsel, advisors, professionals or consultants in connection with advising the DIP Agents or the Ad Hoc First Lien Group (collectively the "<u>DIP Secured Party Advisors</u>")).  The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee guidelines, may be in summary form only (and may contain redactions of privileged, confidential or otherwise sensitive information), and shall not be subject to application or allowance by the Court.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.  The invoices for fees and expenses to be paid pursuant to this paragraph 24 shall be

70

provided to the Fee Notice Parties.  Within ten (10) calendar days after delivery of such invoices, the ("Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date the fees and expenses of the DIP Secured Party Advisors incurred on or prior to such date without the need to provide notice to any other party or otherwise comply with the procedures set forth in this paragraph 24.

24. <u>Indemnification</u>.  The Debtors are authorized to jointly and severally indemnify and hold harmless each of the DIP Agents (solely in their capacity as DIP Agents), each DIP Secured Party (solely in its capacity as a DIP Secured Party) and each other party entitled to an indemnity in accordance and subject to the terms and conditions set forth in the DIP Credit Agreements.

26. <u>Proofs of Claim</u>.  The DIP Secured Parties and each of the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim against the Debtors for payment of the Prepetition Obligations arising under the Prepetition Debt Documents.  The statements of claims in respect of such indebtedness set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim or Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce any unnecessary expense to the Debtors' estates,

71

SC1:5275465.11

each of the Prepetition RBL Agent, Prepetition FLMO Term Loan Agent, Prepetition FLLO Term Loan Agent and Prepetition Second Lien Collateral Trustee is authorized to file in the Debtors' lead chapter 11 case *In re California Resources Corporation,* Case No. 20-33568 (DRJ), a master proof of claim on behalf of its respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Debt Documents and hereunder (each, a "Master Proof of Claim") against each of the Debtors.  Upon the filing of any such Master Proof of Claim, the Prepetition RBL Agent, Prepetition FLMO Term Loan Agent, Prepetition FLLO Term Loan Agent or Prepetition Second Lien Collateral Trustee, as applicable, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims of any type or nature whatsoever with respect to the applicable Prepetition Debt Documents, and the claim of each applicable Prepetition Secured Party (and each of its successors and assigns) named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any such party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties.  Any proof of claim filed by the Prepetition RBL Agent, Prepetition FLMO Term Loan Agent, Prepetition FLLO Term Loan Agent or Prepetition Second Lien Collateral Trustee shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.  Any order

72

entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to the DIP Secured Parties or Prepetition Secured Parties.

27.   <u>Carve Out</u>.

(a)   *Carve Out*.  Subject to the terms and conditions set forth herein, the DIP Liens, Superpriority DIP Claims, Prepetition Liens, Adequate Protection Liens and Adequate Protection Claims shall be subject to the payment of the Carve Out.  As used in this Final Order, the "<u>Carve Out</u>" means, without duplication, the following expenses, subject, in each case, to application of any retainers that may be held by the applicable professionals as well as proceeds from unencumbered assets then currently available: (I) the payment of unpaid fees, expenses and disbursements incurred after delivery of a Carve Out Trigger Notice (as defined below) in connection with the Chapter 11 Cases by professionals employed by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code and by professionals employed by the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (collectively, the "<u>Case Professionals</u>"), and the reasonable unpaid expenses (which for the avoidance of doubt, shall not include counsel fees and expenses) of the members of the Committee ("<u>Committee Members</u>") that are incurred after delivery of a Carve Out Trigger Notice, in the aggregate amount not in excess of $7 million for all such Case Professionals and Committee Members to the extent such fees, expenses and disbursements are allowed by the Court at any time, regardless of whether allowed by interim order, procedural order or otherwise, excluding for purposes of this clause (I) any success fee, completion fee, transaction fee or similar investment banking fee (the amounts described in this clause (I), the "<u>Wind-Down Carve Out Amounts</u>"); (II) all accrued and unpaid professional fees and disbursements incurred by Case Professionals and all reasonable unpaid expenses of Committee Members (which, for the avoidance of doubt, shall not include counsel fees or

expenses) in each case incurred on or prior to the delivery of a Carve Out Trigger Notice to the

extent allowed by the Court at any time, regardless of whether allowed by interim order, procedural

order or otherwise (the amounts described in this clause (II), collectively, the "Pre-Trigger Amount

Professional and Committee Member Fees"); (III) all fees to be paid to the clerk of the Court and

to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717 plus interest at the statutory

rate; and (IV) all reasonable and documented fees and expenses incurred by a trustee under section

726(b) of the Bankruptcy Code in aggregate amount not in excess of $100,000.  Nothing in this

Final Order shall prevent, authorize, or require the payment of any fees or expenses incurred by

members of the Committee if such fees or expenses are separately provided for under a chapter 11

plan.  As used in this Final Order, the term "Carve Out Trigger Notice" means the delivery by the

Senior DIP Agent of a written notice to the Debtors, the U.S. Trustee and counsel to the Committee

following the occurrence and during the continuation of a Termination Event, expressly stating

that the Wind-Down Carve Out Amounts are invoked.  Upon the Debtors' receipt of a Carve Out

Trigger Notice, the Wind-Down Carve Out Amounts and the Pre-Trigger Amount Professional

and Committee Member Fees (collectively, the "Carved-Out Professional and Committee Member

Fees") shall immediately be funded by the Debtors to an escrow account (the "Professional and

Committee Member Fee Escrow") with an escrow agent selected by the Debtors and approved by

the Senior DIP Agent and the Committee (which such approval shall not be unreasonably withheld,

conditioned or delayed) pursuant to an escrow agreement reasonably acceptable to the Senior DIP

Agent and the Committee, from any and all available Cash Collateral or cash held by the Debtors

and, if the then-available cash and Cash Collateral is not sufficient to cover the Carved-Out

Professional and Committee Member Fees, the first proceeds from the sale of the DIP Collateral

until the Carved-Out Professional and Committee Member Fees are fully funded into the

74

Professional and Committee Member Fee Escrow; *provided*, that the funding of the Pre-Trigger Amount Professional and Committee Member Fees into the Professional and Committee Member Fee Escrow shall be based on good faith estimates obtained by the applicable professionals.  The Professional and Committee Member Fee Escrow shall be subject to a first-priority lien securing the Carved-Out Professional and Committee Member Fees, a second priority lien securing the Senior DIP Obligations, a third priority lien securing the Junior DIP Obligations and a fourth priority lien securing the Adequate Protection Claims.  Notwithstanding anything to the contrary herein, upon the delivery of a Carve Out Trigger Notice, the Senior DIP Agent or the Junior DIP Agent shall be required to transfer cash that it sweeps, receives or forecloses upon at any time from and after the delivery of a Carve Out Trigger Notice into the Professional and Committee Member Fee Escrow until such time as the Carved-Out Professional and Committee Member Fees have been fully funded into the Professional and Committee Member Fee Escrow.  For the avoidance of doubt, upon delivery of a Carve Out Trigger Notice, in no instance shall any DIP Obligations or Prepetition Obligations be repaid until the Professional and Committee Member Fee Escrow is fully funded or as further set forth in other order(s) of the Court.  So long as no Carve Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses to Case Professionals and reimbursement of expenses to Committee Members (which, for the avoidance of doubt, shall not include counsel fees and expenses) allowed and payable under sections 330 and 331 of the Bankruptcy Code, but solely to the extent the same are allowed at any time by the Court, regardless of whether allowed by interim order, procedural order or otherwise; *provided*, that, for the avoidance of doubt, the payment of such compensation and reimbursement of such expenses prior to the delivery of a Carve Out Trigger Notice shall not reduce the applicable Wind-Down Carve Out Amount.  No portion of the Carve Out may be used in contravention of

75

the restrictions or the limitations on the use of the Carve Out set forth in this Final Order. Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Professional and Committee Member Fee Escrow to satisfy in full the Professional Fees and Committee Member expenses shall not affect the priority of the Carve Out and (ii) in no way shall the Budget, the Carve-Out, the Carve-Out Trigger Notice, the Wind-Down Carve Out Amount, any limitation in Paragraph 28 hereof, or any of the foregoing be construed as a cap or limitation on the amount of the Professional fees and Committee Member expenses due and payable by the Debtors.

(b)     The DIP Agents and the DIP Lenders shall retain automatically perfected and continuing security interests in any residual amount in the Professional and Committee Member Fee Escrow Account available following satisfaction in full of all obligations benefiting from the Carve-Out (the "Residual Carve-Out Amount").  Promptly (but in no event later than 5 business days) following the satisfaction in full of all obligations benefiting from the Carve-Out, the Debtors shall deliver the Residual Carve-Out Amount, if any, to the Senior DIP Agent (or, following a Discharge of Senior DIP Obligations, the Junior DIP Agent).

(c)     *No Direct Obligation to Pay Professional Fees.*  Neither the DIP Agents, the DIP Secured Parties nor the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agents, DIP Secured Parties or Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)     *Payment of Carve Out After Carve Out Trigger Notice.*  Any payment or reimbursement made on or after the date of the delivery of the Carve Out Trigger Notice in respect

SC1:5275465.11

of any Carved-Out Professional and Committee Member Fees accrued or incurred after delivery of the Carve Out Trigger Notice shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar basis.

28.     <u>Limitations on the DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out</u>.  No DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other amounts may be used, directly or indirectly, by any of the Debtors, the Committee, or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith):  (a) to object to, prevent, hinder, or delay the DIP Agents', the DIP Secured Parties' enforcement or realization upon any of the DIP Collateral, Prepetition Collateral or Cash Collateral, once a Termination Event occurs; (b) to use or seek to use Cash Collateral other than as provided pursuant to this Final Order or, except to the extent permitted under the terms of the DIP Loan Documents, selling or otherwise disposing of DIP Collateral, in each case, without the consent of both DIP Agents; (c) to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claims, the Adequate Protection Liens, the Adequate Protection Claims or the Prepetition Liens; (d) to request or seek any modification of this Final Order in any manner not approved by both DIP Agents to the extent such modification would adversely affect the rights of the DIP Secured Parties or the Prepetition Secured Parties; or (e) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any challenge (including any litigation or other action) for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief

77

against any or all of the DIP Agents, DIP Secured Parties or Prepetition Secured Parties, or their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action or other matter (including formal or informal discovery proceedings in anticipation thereof) with respect to (A) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the amount, validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Superpriority DIP Claims, the DIP Liens, the DIP Loan Documents, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition RBL Loan Documents, the Prepetition RBL Obligations, the Prepetition FLMO Term Loan Documents, the Prepetition FLMO Obligations, the Prepetition FLLO Term Loan Documents, the Prepetition FLLO Obligations, the Prepetition Senior Liens, the Prepetition FLLO Liens, the Prepetition Second Lien Documents, the Prepetition Second Lien Note Obligations or the Prepetition Second Liens, (D) any action seeking to challenge, invalidate, modify, set aside, avoid, marshal, recharacterize or subordinate (other than as contemplated by the Intercreditor Agreements), in whole or in part, the DIP Obligations, the DIP Liens, the Superpriority DIP Claims, the DIP Collateral, the Prepetition Collateral, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims or the Prepetition Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Secured Parties hereunder or under any of the DIP Loan Documents or prepetition agreements including the Elk Hills Power Agreements (as defined in the Restructuring Support Agreement) or to any of the Prepetition Secured Parties hereunder or under any of the Prepetition Debt Documents (in each case, including, without limitation, claims, proceedings or

actions that might prevent, hinder or delay any of the DIP Agents' or the DIP Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and the Interim Order and/or this Final Order (as applicable)), or (F) objecting to, contesting, or interfering with, in any way, the DIP Agents' and the DIP Secured Parties' enforcement or realization upon any of the DIP Collateral once a Senior DIP Event of Default or Junior DIP Event of Default has occurred; *provided*, *however*, that (i) the Carve Out may be used in seeking to establish that Prepetition Secured Parties are sufficiently adequately protected such that the Debtors' use of Cash Collateral should be permitted, and (ii) no more than $200,000 in the aggregate of the DIP Collateral, the Carve Out, and proceeds from the borrowings under the DIP Facilities or Prepetition Collateral, may be used by the Committee to investigate claims and/or liens of, and claims, counterclaims, causes of action, objections, contests or defenses against, the Prepetition Secured Parties.  For the avoidance of doubt, the Debtors and the Committee reserve the right to contest, and to use Cash Collateral to contest, the existence or extent of any Diminution in Value for purposes of any Adequate Protection Claim or Adequate Protection Lien.

29.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    Each stipulation, admission, release, and agreement contained in, or approved by, this Final Order including, without limitation, the Debtors' stipulations set forth in paragraph E hereof (collectively, the "<u>Stipulations</u>"), shall be binding on the Debtors upon entry of this Final Order.  The Stipulations shall be binding on any successor to the Debtors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) under all circumstances and for all purposes, and

79

the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.

(b)     Upon expiration of the Challenge Period (as defined below), the Stipulations shall be binding upon all other parties in interest (including without limitation, the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless (1) the Committee or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period) has timely and duly filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "Challenge Proceeding") by the expiration of the Challenge Period (as defined below), objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Debt Documents, or otherwise asserting or prosecuting any avoidance action or any other claim, counterclaim, cause of action, objection, contest or defense (a "Challenge") against any of the Prepetition Secured Parties, or any of their respective affiliates, subsidiaries, officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Prepetition Obligations, the Prepetition Liens or the Prepetition Debt Documents and (2) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding; *provided*, *however*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred).

80

(c)     Only those parties in interest who properly obtain standing and commence a Challenge within the Challenge Period may prosecute such Challenge.  As to (x) any parties in interest, including the Committee, who do not obtain standing and fail to file a Challenge prior to the expiration of the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Cases), shall be deemed to be forever waived and barred; (2) all of the findings, Debtors' stipulations, waivers, releases, affirmations and other Stipulations hereunder as to the priority, extent, allowability, validity and perfection as to all  Prepetition Obligations, Prepetition Liens and Prepetition Debt Documents, shall be of full force and effect and forever binding upon the applicable Debtors' bankruptcy estates and all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Cases; (3) the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Cases shall be deemed to have released, waived and discharged the Prepetition Secured Parties (in each case, whether in their prepetition or postpetition capacity), together with each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations; (4) the Prepetition Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, offset, avoidance, for all purposes in these Chapter 11 Cases and

81

any Successor Cases; (5) the Prepetition Debt Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the Debtors in the Chapter 11 Cases and any Successor Cases; and (6) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense.

          (d)      The "Challenge Period" shall mean the later of (1) September 28, 2020 and (2) the date and time at which objections are due in respect of the Plan (or, if the Plan has been withdrawn between September 28, 2020, and such later date, two business days following such withdrawal). The Challenge Period may only be extended (A) with the written consent of the Prepetition RBL Agent with respect to the Prepetition RBL Obligations, the Prepetition RBL Loan Documents or the Prepetition Senior Liens; the Prepetition FLMO Term Loan Agent with respect to the Prepetition FLMO Obligations, the Prepetition FLMO Term Loan Documents or the Prepetition Senior Liens; the Prepetition FLLO Term Loan Agent with respect to the Prepetition FLLO Obligations, the Prepetition FLLO Term Loan Documents or the Prepetition FLLO Liens; or the Prepetition Second Lien Collateral Trustee with respect to the Prepetition Second Lien Obligations, the Prepetition Second Lien Documents or the Prepetition Second Liens, or (B) by the Court, upon a motion for cause shown, in each case, prior to the expiration of the Challenge Period; *provided*, that if, prior to the expiration of the Challenge Period, the Committee files a motion seeking an order of the Court granting standing to the Committee to pursue a Challenge, and such motion sets forth with specificity and in reasonable detail the basis for such Challenge, the Challenge Period shall be extended, solely with respect to those Challenges set forth therein with specificity and in reasonable detail, to the date that the Court rules on such standing motion.

(e)     In the event there is a timely successful Challenge by a final non-appealable order, pursuant and subject to the limitations contained in this paragraph 29, to the repayment of any of the Prepetition RBL Obligations pursuant to this Final Order based upon a successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition RBL Obligations or the liens securing the same, this Court shall determine the remedies as to the portion of the Prepetition RBL Obligations subject to the successful Challenge, which may include the unwinding the repayment of and reinstating such Prepetition RBL Obligations, and all parties' rights are fully reserved in respect of any such potential remedies . If any amount of Prepetition RBL Obligations are reinstated or required to be repaid to the Debtors or any third party, any portion of such Prepetition RBL Obligations that are secured by valid and enforceable liens shall benefit from the RBL Adequate Protection Claims and the RBL Adequate Protection Liens and the Prepetition RBL Agent reserves all of its rights to seek additional or different adequate protection.

(f)     Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced and standing is timely obtained, the Stipulations shall, upon expiration of the Challenge Period, nonetheless remain binding and preclusive (as provided in paragraph 29(b) hereof) on all parties-in-interest (other than the party that has brought such Challenge in connection therewith and then only with respect to the Stipulations that are subject to the Challenge and not to any Stipulations not subject to the Challenge), except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction; and (y) the Prepetition Secured Parties reserve all of their respective rights to contest on any grounds any Challenge and preserve any and all of their rights to appeal and stay any orders issued in connection with a successful Challenge.

83

Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed in the Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

      30.    <u>Reservation of Rights of Governmental Units</u>.  Notwithstanding anything in the Interim Order, this Final Order, or the DIP Loan Documents, nothing in the Interim Order, this Final Order, or the DIP Loan Documents shall:  (i) impair or affect any governmental unit's rights, claims, and defenses of setoff and recoupment; (ii) impair or affect any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, escrow, surety bond, or insurance proceeds; (iii) waive, impair, or affect any governmental unit's rights under applicable law to refuse to provide its consent to the proposed assumption and/or assignment of any lease, easement, right-of-way grant, agreement, or executory contract; (iv) limit any governmental unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4); (v) impair or affect the right of any governmental unit to object to the terms of any credit bid for cause; or (vi) relieve the Debtors of any obligations under police or regulatory laws or under 28 U.S.C. § 959(b).  With respect to environmental liabilities, including, without limitation, plugging and abandonment, reclamation and decommissioning owed to any governmental unit, to the extent that the actions of the DIP Secured Parties or Prepetition Secured Parties (i) constitute, within the meaning of 42 U.S.C. § 9601(F) and (G), actual participation in the management or operational functions of a vessel or facility owned or operated by the Debtors, or (ii) otherwise cause lender liability to arise or the status of control, responsible person, owner or operator to exist under applicable law, the rights of such governmental unit under such applicable laws are preserved, and

84

all rights of the DIP Secured Parties or Prepetition Secured Parties to contest such liability or status under applicable laws are preserved.

31.    <u>Reporting to Committee</u>.  Notwithstanding anything to the contrary contained in this Agreement, the Committee shall receive all reporting and information provided to the DIP Agent, any of the DIP Secured Parties, the Ad Hoc Group, the Ad Hoc Crossover Group or the Debtors, including without limitation as to Updated Budgets and Variance Reports.

32.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

33.    <u>Section 506(c)</u>.  In partial consideration for, among other things, the Carve Out and the payments made under the Approved Budget to administer the Chapter 11 Cases with the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Secured Parties or the Prepetition Secured Parties, any of the DIP Obligations or the Prepetition Obligations, or any of the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection, enhancement or realization by the DIP Secured Parties upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable or otherwise, without the prior express written consent of the affected DIP Agent, Prepetition RBL Agent, Prepetition Senior Secured Collateral Agent, Prepetition FLLO Term Loan Agent, Prepetition FLMO Term Loan Agent or Prepetition Second Lien Collateral Trustee, in their sole discretion (but subject to the Intercreditor Agreements where applicable).  For the avoidance of doubt, consent to the Carve Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph.

Nothing contained in this Final Order shall be deemed to consent by the Senior DIP Agent, the Junior DIP Agent, the DIP Secured Parties, or the Prepetition Secured Parties to any charge, lien, assessment, or claims against any DIP Collateral, under section 506(c) of the Bankruptcy Code or otherwise.

34.     Section 552(b). The Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties or the Prepetition Obligations.

35.     Waiver of Marshaling for DIP Secured Parties. The DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the DIP Collateral; *provided,* that prior to seeking payment of any DIP Superpriority Claims or DIP Liens from net proceeds of Avoidance Actions, the DIP Secured Parties shall use commercially reasonable efforts to first satisfy such claims or liens from all other DIP Collateral.

36.     Waiver of Marshaling for Prepetition Secured Parties. In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Prepetition Collateral; *provided*, that, in the event that either (x) the Restructuring Support Agreement has been terminated by the Debtors due to a material breach by the Required Consenting Creditors or (y) the Backstop Commitment Agreement has been terminated due to the Backstop Parties terminating their Backstop Commitments, the Prepetition Secured Parties shall be subject to, and retain all arguments and defenses in connection with, such doctrines.

37.     Right to Credit Bid. Pursuant to section 363(k) of the Bankruptcy Code, (a) the Senior DIP Agent, on behalf of the Senior DIP Secured Parties (subject to the terms of the Senior

SC1:5275465.11

DIP Loan Documents) shall have the right to "credit bid" (without the need to submit a deposit) up to the full amount of the Senior DIP Obligations, in connection with any sale or other disposition of all or any portion of the DIP Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, and shall automatically be deemed a "qualified bidder" with respect to any such sale or disposition of DIP Collateral; and (b) the Junior DIP Agent, on behalf of the Junior DIP Secured Parties (subject to the terms of the Junior DIP Loan Documents) shall have the right to "credit bid" up to the full amount of the Junior DIP Obligations, in connection with any sale or other disposition of all or any portion of the DIP Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code but only if such bid by the Junior DIP Agent includes a cash payment sufficient to provide for the Discharge of Senior DIP Obligations and the Discharge of Senior DIP Obligations occurs immediately after giving effect to such credit bid.

38.   <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Secured Parties under the DIP Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan

87

or plans of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties; *provided*, that notwithstanding the foregoing, in no event shall the Junior DIP Agent or Junior DIP Secured Parties seek additional or supplemental relief in respect of the Debtors or propose any chapter 11 plan or plan of reorganization, in each case that is inconsistent with the payment priority of the Senior DIP Obligations and Prepetition RBL Obligations set forth in paragraph 22(c). Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

39.    <u>Intercreditor Agreements</u>.  Nothing in this Final Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreements, including without limitation, the turnover and bankruptcy-related provisions contained therein, and the Intercreditor Agreements shall each remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreements.

40.    <u>No Waiver by Failure to Seek Relief</u>.  The failure, at any time or times hereafter, of the DIP Secured Parties and the Prepetition Secured Parties, to require strict performance by the Debtors of any provision of this Final Order shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith. No delay on the part of any party in the exercise of any right or remedy under this Final Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. No consents by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties.

41.     <u>Binding Effect of this Final Order</u>.  Immediately upon, and effective as of, entry by the Court, this Final Order shall inure to the benefit of the Debtors, the Committee, the DIP Secured Parties and the Prepetition Secured Parties and it shall become valid and binding upon the Debtors, the DIP Secured Parties and the Prepetition Secured Parties and any and all other creditors of the Debtors, the Committee or other committee appointed in the Chapter 11 Cases, any and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of any of the Debtors in any of the Chapter 11 Cases, or upon dismissal of any of the Chapter 11 Cases.  Further, upon entry of the Interim Order, the DIP Obligations became allowed claims for all purposes in each of the Chapter 11 Cases.

42.     <u>No Modification to Final Order</u>.  Until and unless the DIP Obligations and the Prepetition RBL Obligations, the Prepetition FLMO Obligations, and the Prepetition FLLO Obligations have been indefeasibly paid in full in cash, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: without the prior written consent of the DIP Agents, the Majority Junior DIP Lenders, the Prepetition RBL Agent, Prepetition FLMO Term Lenders holding more than 50% of the loans under the Prepetition FLMO Credit Agreement (the "<u>Required FLMO Term Lenders</u>"), the Prepetition FLLO Term Lenders holding more than 50% of the loans under the Prepetition FLLO Credit Agreement (the "<u>Required FLLO Term Lenders</u>") and the Committee (a) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter 11 Cases, equal or superior to the Superpriority DIP Claims, the RBL Adequate Protection Claims, the FLMO Adequate Protection Claims or the FLLO Adequate Protection Claims other than the Carve Out; (b) any order

89

authorizing the use of Cash Collateral resulting from the DIP Collateral or the Prepetition Collateral that is inconsistent with this Final Order; or (c) any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, the Senior Adequate Protection Liens or the FLLO Adequate Protection Liens except as specifically provided in the DIP Loan Documents or this Final Order.  The Debtors irrevocably waive any right to seek any amendment, vacatur, stay, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agents, the Majority Junior DIP Lenders, the Required FLMO Term Lenders and the Required FLLO Term Lenders, the Committee and Ares to the extent such amendment, vacatur, stay, modification or extension is adverse to Ares.  Until the Discharge of Senior DIP Obligations, the Junior DIP Agent and the Junior DIP Secured Parties may not seek to amend, modify, vacate, supplement or waive the terms of this Final Order in a manner adverse to the interests or rights of the Senior DIP Secured Parties or, prior to the Prepetition RBL Obligations being discharged, the Prepetition RBL Secured Parties, in either case without the prior written consent of the Senior DIP Agent and the Prepetition RBL Agent, as applicable.

43.    <u>Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, any other document or any other order of the Court and of this Final Order, the provisions of this Final Order shall govern and control.

44.    <u>Limits on Lender Liability</u>.  Nothing in this Final Order or in any of the DIP Loan Documents or the Prepetition Debt Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from any

90

and all activities by the Debtors in the operation of their businesses in connection with the Debtors' postpetition restructuring efforts.

45.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Chapter 11 Cases, or (d) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, following dismissal of any of the Chapter 11 Cases, or any Successor Cases, and shall maintain their priority as provided by this Final Order. The DIP Protections (as defined below), as well as the terms and provisions concerning the reimbursement and indemnification of the DIP Secured Parties shall continue in any of the Chapter 11 Cases following dismissal of any of the Chapter 11 Cases, termination of the provisions of this Final Order, and/or the indefeasible payment in full of the DIP Obligations.

46.    <u>Dismissal</u>.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) the rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents, including the DIP Liens and the Superpriority DIP Claims (collectively, the "<u>DIP Protections</u>"), shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations have been paid in full (and that all DIP Protections shall, notwithstanding such dismissal, remain

91

binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections.

47.     Entry of this Final Order/Waiver of Applicable Stay.  The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of the Court maintained in regard to the Chapter 11 Cases.  This Final Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

48.     Effect of this Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

49.     Retention of Jurisdiction.  The Court shall retain exclusive jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facilities and/or this Final Order.

  **Signed:  August 25, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

SC1:5275465.11